# FRENCH ET AL. *v.* FRENCH ET AL.

[No. 8,963. Filed May 5, 1915.]

1. WILLS.—*Construction.—Vesting of Fee.*—In the absence of express reference as to the fee simple title to real estate devised, the fee, if it passes at all under the will, passes by implication and the rule of construction that partial intestacy is not favored by the law. p. 627.

2. WILLS.—*Construction.—Vesting of Fee.*—Where by the terms of a will, the fee simple title to real estate is disposed of, and there is doubt as to when the testator intended the same to vest, the rule of construction which favors an interpretation as to the vesting of the fee simple title at the earliest possible moment is applicable and it will be held to vest at testator's death, in the absence of a manifest intention to the contrary. p. 627.

3. TRUSTS.—*Title of Trustee.—Extent.—Testamentary Trusts.*—A trustee takes only so much of the legal estate as is necessary for the carrying out of the trust, and where the estate taken by the trustees under a testamentary trust is not definitely defined, the court, in determining the extent of the trust, must resort to the

rule of construction which gives controlling influence to the testator's intention.    p. 628.

4.    WILLS. — *Devises.* — *Devises to Executors.* — *Devises Directing Sale.*—*Legal Title.*—Where a devise of real estate is made to an executor, with directions to sell the same and make distribution of the proceeds, the executor is custodian of the title until divested by sale; but where a devise directs the real estate to be sold and the proceeds to be distributed without passing the legal title to the executor, such title is in the beneficiary or the heir until sale is made.    p. 630.

5.    WILLS.—*Testamentary Trusts.*—*Construction.*—*Vesting of Fee.* —Where testator devised to his wife all his real and personal property to be held by her during life, "to manage, use and enjoy by her during life" stating that it was his desire that the farm should be cultivated for the benefit of the wife first, second for the benefit of the children, and that none of the real estate should be sold or divided during the wife's lifetime; and designated certain trustees for his wife, stating that it was his will that they advise with her during her lifetime and that they settle her estate after her death, and that they should call all the heirs together and make a fair and equal division of all the property both real and personal, etc., it is apparent that the primary purpose of the testator in postponing the distribution of his estate until the death of his wife was for the benefit of the wife, and the carrying out of the purposes of the trust, as gathered from the will does not call for the vesting of the fee simple title in the trustees, so that the fee simple title must be considerd as having vested in the heirs, subject to the life estate of the widow, and that the same was an alienable estate.    pp. 630, 631.

6.    WILLS.—*Construction.*—*Testamentary Trust.*—*Division of Land Among Remaindermen.*—Where land is directed to be divided among remaindermen after the termination of a particular estate, it is presumed in the absence of other controlling provisions in the will, that the direction relates to the beginning of enjoyment by the remaindermen, and not to the vesting of title in them.    p. 631.

7.    TRUSTS.—*Life Estate in Trust.*—*Dealings Between Trustee and Remaindermen.*—Where a life estate in trust existed for the benefit of testator's widow, and the fee simple title vested in the remaindermen at the testator's death, the relation between the trustees and such remaindermen was in its nature fiduciary, so that a court of equity would scrutinize any transaction between the trustees and the remaindermen with care, but, in the absence of any claim that an unfair advantage was obtained by such trustees in procuring conveyances to themselves of such fee simple title, such conveyances must be upheld,    p. 632.

From Posey Circuit Court; *Alexander Gilchrist,* Special Judge.

Action by George S. French and others against William H. French and others. From a judgment for defendants, the plaintiffs appeal. *Affirmed.*

*G. V. Menzies* and *F. P. Leonard,* for appellants.

*John R. Brill, Frank H. Hatfield, John W. Brady* and *Walter S. Jackson,* for appellees.

MORAN, J.—On October 22, 1890, James T. French departed this life, testate, at Posey County, Indiana, where he left an estate, consisting of personal property and 210 acres of farming land. The rents and profits and the title to an undivided five-ninths part of the real estate are involved in this litigation which calls for the construction of the will in so far as it provides for the creating of a trust in the testator's property. His widow and nine children were made his beneficiaries. The part of the will necessary to a presentation of the questions raised on appeal is as follows:

"I hereby will and bequeath to my beloved wife, Esther C. French, all of my real and personal property to be held by her during her natural life to manage, use and enjoy by her during her life. I desire that the farm shall be cultivated as heretofore by myself for the benefit of my wife, first, second for the benefit of my children after my wife has been supplied with a sum sufficient to keep her but none of my real estate shall be sold or divided during my wife's lifetime. Third, I will designate as trustees for my wife F. M. Greathouse, R. W. Highman and William H. French, it is my will that they advise with her during her lifetime and after her death they shall settle her estate. They shall call all the heirs together and make a fair and equal division of all the property both real and personal. I don't desire that the farm shall be sold unless said heirs may sell to each other. Fifth. It is my will that my wife, Esther C. French shall act as executor of my last will and testament, with the assistance of the commissioners to help and advise with her on business. I further advise that when her cash capital shall exceed Five Hun-

dred Dollars from sale of property and rent of land to an amount say one thousand dollars, the commissioners and my wife shall call all the heirs together and make an equal divide of the money on hands except Five Hundred Dollars which shall be kept on hand for my wife's support. Each of said heirs shall receipt their mother for the amount they receive and the same shall be kept by her until her death. I further advise that my wife shall make one of the commissioners treasurer as clerk for her. Either F. M. Greathouse or R. W. Highman to take charge of the business and tend to renting the farm. For which she shall pay a reasonable amount for the time spent. I desire that the farm shall be rented to some one of the heirs and recommend that the farm be kept in good state of cultivation by clovering well.''

Esther C. French, widow of James T. French, departed this life December 14, 1908, and following her death, appellants brought suit against appellees for an accounting of the rents and profits of an undivided five-ninths of the real estate mentioned in the will, and by a second paragraph of complaint they sought partition thereof. Numerous pleadings were filed on the part of appellants, including a cross-complaint by appellants, William H. French and Francis M. Greathouse, by which they asked to reform the description of certain deeds executed to them by appellees, for appellees' undivided interest in the real estate and to quiet the title thereto. It is unnecessary to dwell further upon the pleadings and the issues joined, as the errors assigned question the correctness of the conclusions of law rendered by the court upon the facts specially found.

A brief summary of the facts discloses that James T. French, at the time of his death, was the owner of the real estate mentioned in the will, and appellants, George S. French, Christopher C. French, Charles D. French, Maria E. Pitts and Louanna Wilson, and appellees, William H. French, Margaret Greathouse and Sallie Highman, are his heirs. Thomas J. French, another heir, is not a party to this appeal. Appellee Robert W. Highman is the husband

of the appellee, Sallie Highman; and appellee Francis M. Greathouse is the husband of Margaret M. Greathouse. Soon after the death of James T. French, his widow, Esther C. French, appellees William H. French, Robert W. Highman and Francis M. Greathouse, as trustees, took upon themselves the carrying out of the trust, as mentioned in the will, and so continued until December 14, 1908. On February 8, 1895, Charles D. French and wife conveyed by warranty deed to William H. French, his undivided one-ninth interest in the real estate mentioned in the will, in consideration of the sum of $840. On February 14, 1896, George S. French and wife conveyed by warranty deed to Francis M. Greathouse an undivided one-ninth interest of the real estate mentioned in the will in consideration of the sum of $900. On June 10, 1896, Louanna Wilson and husband conveyed by warranty deed to William H. French an undivided one-ninth interest in the real estate mentioned in the will, in consideration of the sum of $950. On March 26, 1897, Christopher C. French and wife conveyed by warranty deed to Francis M. Greathouse an undivided one-ninth interest in the real estate mentioned in the will in consideration of the sum of $925. On September 29, 1899, Maria E. Pitts and husband conveyed by warranty deed to Francis M. Greathouse and William H. French an undivided one-ninth interest in the real estate mentioned in the will in consideration of the sum of $1,026. Each of the conveyances named above were made subject to the life estate of the widow of James T. French. William H. French and Francis M. Greathouse were acting as trustees under the will of James T. French at the time they took the conveyances from appellants. It was the intention of the respective grantors to convey to the respective grantees all the right, title and interest they had in the real estate, including the rents and profits from and after the date of the respective conveyances. No part of the consideration received by appellants for the

conveyances of real estate, to the grantees has been returned. Grantors were of full age and competent to manage their business affairs and had knowledge of the value of the land conveyed at the time of the conveyance, and there was no fraud, deceit or overreaching practiced on the part of the trustees. The value of the real estate at the time the cause was tried was $100 per acre, and at the date of the respective conveyances it was worth $50 per acre. The consideration paid for the various interests ranged from $37 to $44 per acre. The increase in value of the land from the time of the conveyance to the date of the trial was due solely to the general increase in the market value of farming lands in that vicinity.

In rendering its conclusions of law the court charged the trustees with the rents and profits from the time they took the management of the trust estate to the filing of the suit, irrespective of the deeds of conveyance, holding that the trustees, in accepting the trust, took the legal estate in the land for and during the life of the widow, and that the rents and profits could not be disposed of by the appellants and that the attempted conveyances to the trustees of the rents and profits were void. There is no complaint as to the result reached in this connection, and it becomes material only in so far as it throws light on the branch of the case covered by the second paragraph, which is, In whom is the title to the undivided five-ninths part of the real estate conveyed or attempted to be conveyed by appellants to appellees, William H. French and Francis M. Greathouse? The court found for appellees William H. French and Francis M. Greathouse upon their cross-complaints, that the deeds from appellants to them were effectual to carry the entire title of appellants in the remainder after the death of Esther C. French, and reformed the descriptions in the deeds as prayed, and found against appellants on their second paragraph of complaint.

Appellants' counsel have devoted much attention to a

learned discussion as to the manner, circumstances, and conditions under which trusts are created. The court found on the branch of the case that had to do with the accounting of the rents and profits, that a trust existed by virtue of the will, as to the management of the real estate involved and the rents and profits arising therefrom. Appellees raised no objection to the court's finding and judgment in this behalf, therefore we need not enter upon a discussion of this phase of the case.

The controversy is narrowed down to the extent of the trust. It is appellants' position that an active trust was created and the whole estate vested in the trustees during the existence of the trust, and the conveyances from the *cestuis que trustent* to the trustees were absolutely void and carried no title. Appellees' position is that the trustees held the whole of the trust estate during the existence of the trust, but that this did not include the fee simple title in the real estate. The duration of the trust covered from the death of James T. French to the date of the death of his widow, about eighteen years, and during this time the fee simple title of the real estate was lodged either in the trustees or the heirs of James T. French. If the heirs of James T. French took the fee simple title by virtue of the will, it is not by express devise but by implication, and the rule of construction that partial intestacy is not favored by the law. *Skinner* v. *Spann* (1911), 175 Ind. 672, 93 N. E. 1061, 95 N. E. 243; *Northern Trust Co.* v. *Wheaton* (1911), 249 Ill. 606, 94 N. E. 980, 34 L. R. A. (N. S.) 1150; *Hawkins* v. *Bohling* (1897), 168 Ill. 214, 48 N. E. 94. There is no expressed reference in the will as to the fee simple title, nor the share of the same devised to either of the heirs. If the testator carved out of his real estate a life estate only, then the fee simple title of course vested in his heirs upon his death by reason of the law of descent. And if the will disposed of the real estate in controversy, then the well-settled prin-

ciple of law may be invoked, that favors an interpretation of a will as to the vesting of the fee simple title at the earliest possible moment. *Taylor* v. *Stephens* (1905), 165 Ind. 200, 74 N. E. 980; *Harris* v. *Carpenter* (1887), 109 Ind. 540, 10 N. E. 422; *Hoover* v. *Hoover* (1889), 116 Ind. 498, 19 N. E. 468; *Amos* v. *Amos* (1889), 117 Ind. 37, 19 N. E. 543; *Bruce* v. *Bissell* (1889), 119 Ind. 525, 22 N. E. 4, 12 Am. St. 436; *Heilman* v. *Heilman* (1891), 129 Ind. 59, 28 N. E. 310; *Fowler* v. *Duhme* (1896), 143 Ind. 248, 42 N. E. 623; *Tindall* v. *Miller* (1896), 143 Ind. 337, 41 N. E. 535; *Aspy* v. *Lewis* (1899), 152 Ind. 493, 52 N. E. 756. And if there is any doubt from the language of the will, as to when the testator intended the property to vest in his residuary beneficiaries, the property will be held to vest at the testator's death, in the absence of a manifest intention to the contrary. *Nelson* v. *Nelson* (1895), 36 Ind. App. 331, 75 N. E. 679; *Moores* v. *Hare* (1896), 144 Ind. 573, 43 N. E. 870; *Burke* v. *Barrett* (1903), 31 Ind. App. 635, 67 N. E. 552; *Kilgore* v. *Kilgore* (1891), 127 Ind. 276, 26 N. E. 56; *Aspy* v. *Lewis, supra.*

Appellants insist that the statute of uses and trusts (§§4015, 4016 Burns 1914, §§2972, 2973 R. S. 1881), prohibits the beneficiary from in any manner disposing of his interest in the trust property, unless the right to make disposition thereof be conferred by the instrument creating such trust, and that a conveyance or other act of a trustee in contravention of a trust shall be absolutely void. Before these sections of the statute can become applicable to the case at bar, the facts must bring the case within the statute. Until it is determined that the fee simple title of the real estate became a part of the trust property, the statute of uses and trusts has no application. A trustee takes so much of the legal estate, only, as is necessary for the carrying out of the trust. 2 Washburn, Real Property (4th ed.) 469; *Locke* v. *Barbour* (1878), 62 Ind. 577, 582; *Neilson* v. *Lagow* (1853), 4 Ind. 607; *Nelson* v. *Davis* (1871), 35 Ind. 474. The estate taken

by the trustees in the case at bar is not definitely defined, and the application of the general doctrine, in the construction of wills, that the intention of the testator is of controlling influence, must be resorted to in determining the extent of the trust. *Pugh* v. *Pugh* (1886), 105 Ind. 552, 5 N. E. 673; *Tyner* v. *Reese* (1880), 70 Ind. 432; *Downie* v. *Buennagel* (1884), 94 Ind. 228; *Hinds* v. *Hinds* (1882), 85 Ind. 312; *Lofton* v. *Moore* (1882), 83 Ind. 112; *Heilman* v. *Heilman, supra; Fowler* v. *Duhme, supra.* 1 Perry, Trusts (6th ed.) §316, makes use of the following language: "Lord Talbot said that it was wholly a matter of intention whether the trustee should take a fee or not; hence, in other cases, it has been said that if no intention appeared upon the face of the will that the trustees were to take anything beyond what was necessary for the execution of the trust, the estate, though limited to them and their heirs, would be cut down to the limit of the trust." And further the same author says in §317: "The court, however, is always reluctant to enlarge an estate in trustees beyond the terms of the gift; and it will not be done unless it is necessary for the execution of the trust." In *Crooke* v. *County of Kings* (1884), 97 N. Y. 421, 446, in construing a statute which provides that, "Every express trust valid as such in its creation, except as herein otherwise provided, shall vest the whole estate in the trustee in law and equity, subject, only to the execution of the trust" held, "This does not mean that the entire absolute fee shall be vested in the trustee, but simply so much of the estate as is put in trust and as is necessary to feed the trust. The remainder of the estate may remain in the creator of the trust, or may be disposed of by him in some other way or to some other person. * * * It is the whole trust estate that is vested in the trustee." And this doctrine finds expression in the following authorities. *Train* v. *Davis* (1906), 49 Misc. 162, 98 N. Y. Supp. 816; Fowler, Real Prop. Law (2d ed.) 76-81; *Moore* v. *Appleby* (1885), 36 Hun 368; *Moore* v. *Appleby* (1888), 108 N. Y.

237, 15 N. E. 377; *Cooke* v. *Platt* (1885), 98 N. Y. 35, 38; *Embury* v. *Sheldon* (1877), 68 N. Y. 227.

By the provisions of the will, there was no direct devise of real estate to the trustees, nor was there an express power to sell the same. If such power was granted, it was 4. by implication. There seems to be a well recognized distinction running through the authorities between a devise to an executor of real estate, with directions to sell the same, and make distribution of the proceeds, and a devise which directs the real estate to be sold, and the proceeds distributed without passing the legal title to the executor. In the one case the executor has been held to be a custodian of the title until divested by sale while in the other, the title is held to be in the beneficiary or the heir until sale is made. *Broomfield* v. *Drook* (1885), 101 Ind. 190; *Nelson* v. *Nelson* (1905), 36 Ind. App. 331, 75 N. E. 679; *Bowen* v. *Swander* (1889), 121 Ind. 164, 22 N. E. 725; *Doe* v. *Lattius* (1852), 3 Ind. 441, 56 Am. Dec. 518. In *Nelson* v. *Nelson, supra,* 337, it was said, ''In this State our Supreme Court has adopted the rule, that although land shall be considered as having been converted into personalty from the date of the testator's death, yet, during the interim between the death of the testator and the time fixed for the actual appropriation and reduction of the land to money, residuary beneficiaries have a vested interest, which is subject to disposition by them.''

It is evident from an examination of the will that the primary purpose James T. French had in postponing the distribution of his estate during the life of his widow 5. was for her benefit and not for the benefit of the children. The judicious management of the estate for the comfort of Esther C. French in the closing years of her life and after he was gone, prompted the testator in providing for the handling of the estate by the trustees in the manner provided. Had it not been for the widow, there would doubtless have been an immediate distribution of the

property upon the death of the testator. The language employed in the will does not admit of the inference, much less does it express, that the estate was withheld from the children by their father, because they were prodigal or liable to dissipate the same. The carrying out of the purposes of the trust, as gathered from the entire will, did not call for the vesting of the fee simple title in the trustees. The keeping of the trust estate intact during the life of Esther C. French accomplished the purpose of the trust, and the accounting of the rents and profits, as required by the lower court, carried out the trust. It is true that the will provides that the trustees shall call all the heirs together and make a fair and equal division of all the property, both real and personal. Appellants have waived this provision, even should it be considered as one of the duties of the trustees in carrying out their trust, by the conveyances of their respective interests in the real estate, providing these conveyances are otherwise legal. And further it has been held "words directing land to be conveyed to or divided among remaindermen after the termination of a particular estate are always presumed, unless clearly controlled by other provisions of the will, to relate to the beginning of enjoyment by the remainderman, and not to the vesting of the title in them. For instance under a devise of an estate, legal or equitable, to the testator's children for life, and to be divided upon or after their death among his grandchildren in fee, the grandchildren living at the death of the testator take a vested remainder at once." *McArthur* v. *Scott* (1884), 113 U. S. 340, 5 Sup. Ct. 652, 28 L. Ed. 1015. We have reached the conclusion that upon the death of James T. French, a fee simple title vested in appellants, subject to the life estate of the widow, and that the same was an alienable estate in lands. 4 Kent, Comm. 202-206; *Knight* v. *Pottgieser* (1898), 176 Ill. 368, 52 N. E. 934; §795 Burns 1914, §752 R. S. 1881; *Elliott* v. *Armstrong* (1829), 2 Blackf. 198.

We hold that the fee simple title to the real estate was not a part of the trust estate, yet under the circumstances, the relation between the trustees and appellants was in its nature fiduciary, and if an advantage had been gained by appellees, which is not contended for, a court of equity would scrutinize the same with care. It has been held, however, "While a trustee may not buy the trust property at his own sale, nor do any act inconsistent with the duties of his trust, and the law requires at his hands the strictest honesty and good faith in his dealings with his *cestui que trust*, still it does not prohibit dealings between the trustee and the *cestui que trust* with reference to the trust property, if the *cestui que trust* be *sui juris*. And when contracts between a trustee and *cestui que trust*, having the effect, as between them, to terminate the *cestui que trust's* interest in the subject of the trust, and such interest was of a nature that it could be disposed of by him, and he is *sui juris*, and the contract openly entered into is fair and reasonable, untainted by fraud or undue influence, such contract, and the rights of the parties under the same, will be upheld both at law and in equity, precisely as would any other contract entered into between other persons sustaining no such relation." *Copeland* v. *Bruning* (1909), 44 Ind. App. 405, 411, 87 N. E. 1000, 88 N. E. 877.

The conveyances from appellants to appellees divested appellants of all the interest they had in the real estate in question, and the conclusion reached by the trial court was correct. Appellants' counsel by their very able brief have raised other questions, but the conclusions we have reached make it unnecessary to pass upon the same. Judgment affirmed.

NOTE.—Reported in 108 N. E. 786. As to jurisdiction of equity to construe wills, see 129 Am. St. 78. See, also, under (1) 40 Cyc. 1580, 1409; (2) 40 Cyc. 1650; (3) 40 Cyc. 1768; 39 Cyc. 207; (4) 18 Cyc. 297; (5) 40 Cyc. 1768; (6) 40 Cyc. 1666; (7) 39 Cyc. 371.