HERRON ET AL. v. STANTON, ADMINISTRATOR.

[No. 10,231.   Filed October 7, 1920.   Rehearing denied January
26, 1921.   Transfer denied May 18, 1923.]

1. WILLS.—*Right to Make Will.*—Every man has the right to
make a will, and thus dispose of whatever estate he may
leave, the title to which was, at the. time of his death, in his
sole right.  p. 689.

2. WILLS.— *Construction.*— *Sustaining Provisions.*— It is the
policy of the law to uphold every provision of a will if it can
be done without violating established rules of construction.
p. 689.

3. WILLS.—*Construction.*—*Intention of Testator.*—In construing
a will, or any item or provision thereof, the primary object
is to ascertain the intention of the testator.  p. 690.

4. WILLS.— *Construction.*— *Intention of Testator.*— *Determina-
tion.*—The intention of the testator must be ascertained from
the language used in the will.  p. 690.

5. WILLS.—*Construction.*—*Validity.*—Where the language used
in a will is reasonably susceptible of two constructions, one of
which would violate an established rule of law, and· thus de-
stroy an intended provision, and the other would sustain the
provision, the latter must be followed.  p. 690.

6. WILLS.—*Construction.*—*Partial Intestacy.*—A construction of
a will resulting in partial intestacy will be avoided, unless the
language of the will is such as to compel it.  p. 690.

7. WILLS.—*Construction.*—*Vesting of Estate.*—If there is any
doubt from the language of the will as to when the testator
intended the property to vest in his residuary beneficiaries, it
will be construed to vest the property at the testator's death.
p. 690.

8. WILLS.— *Construction.*— *Devises.*— *Cutting Down in Subse-
quent Clauses.*—Where in one clause of a will a devise or
bequest is made without condition, such devise or bequest can-
not be taken away or cut down by subsequent words which are
not equally clear and decisive of the testator's intention.  p. 690.

9. CHARITIES.—*Charitable Bequests.*—*Devices for Purposes of
Education.*—Bequests for the purposes of education are, in
law, treated as charitable, and the particular character of the
education sought to be fostered does not in any way affect the
validity of such bequests.  p. 691.

10. CHARITIES.—*Charitable Bequests.*—*Device to Art School.*—
A bequest of money as a fund for an art institute is a ·bequest
to charity.  p. 691.

11. CHARITIES.—*Charitable Bequests.*—*Validity.*—Legacies and
devises for the use of charity are entitled to peculiar favor,

and are regarded as privileged testaments, and will not be declared void if they can, by any possibility consistent with law, be held valid.  p. 691.

12.  CHARITIES.— *Bequest to Art School.— Vesting of Title.— Conditions Precedent and Subsequent.—Use of Name of Donor.* —Where testator devised that that part of his estate remaining after payment of specific legacies to a named incorporated art association, such remainder "to be to said corporation absolutely and forever," conditions attached to the gift that testator bequeathed the residue "as the same shall be reduced to money," and that the "art gallery and art school    *    *    * when established and maintained shall each be designated and named by such name or names as will include the name of the testator," and that the executor "may pay to said association, under this bequest, the money realized by him from time to time, whenever he has received what is deemed by him proper evidence that said association has adopted the name or names for the gallery or school herein set forth," and that the "use of such name or names shall be perpetual, or so long as said gallery and school are severally maintained," *held* conditions subsequent to the vesting of the estate and not conditions precedent, so that the estate vested in the donee at the time of testator's death, subject to be divested if the association failed to adopt and continue to use testator's name in connection with the art school and gallery when they were established.  p. 692.

13.  PERPETUITIES.—*Charitable Gifts.—Rule against Perpetuities. —Applicability.*—The rule against perpetuities does not apply to gifts for charitable uses where the title vests immediately in charity.  p. 695.

14.  WILLS.—*Construction.—Devise to Charity on Condition Subsequent.— Limitation over.— Validity.— Statutes.—* Since the rule against perpetuities does not apply to gifts for charitable uses where the title vests immediately in charity, where a gift is to charity in the first instance, then over to other charities upon the happening of a contingency which may or may not take place within lives in being, as provided by the statutes (§§3998, 9723 Burns 1914, §§2962, 6027 R. S. 1881), the limitation over is valid.  p. 695.

From Marion Superior Court (91,204) ; *Linn D. Hay,* Judge.

Action by John Herron and others against Howard M. Stanton, administrator *de bonis non* of the estate of

John Herron, deceased.   From a judgment for defendant, the plaintiffs appeal.   *Affirmed.*

*Charles T. Hanna* and *Thomas A. Daily,* for appellants.

*Henry H. Hornbrook, Charles W. Smith, Charles Remster* and *Albert P. Smith,* for appellee.

REMY, J.—Appellants, the heirs and next of kin of John Herron, deceased, instituted this action against appellee, administrator *de bonis non* with the will annexed of the estate of the decedent, to recover possession of the unsold real estate of which the decedent died seized.   The issues were formed by a complaint in ejectment in two paragraphs, the first in the usual form, and as required by the statute; the second setting forth in detail the facts as to the decedent's estate, heirs, will, etc.   To the former, appellee filed an answer in two paragraphs, and to the latter a demurrer which was sustained.   A separate and several demurrer filed by appellants to each paragraph of the answer was overruled as to the first paragraph, and sustained as to the second.   Appellants, having elected to abide by the sufficiency of their respective pleadings, refused to plead further, and judgment was rendered against them.

Errors assigned and relied upon for reversal are: (1) Sustaining appellee's demurrer to the second paragraph of complaint; and (2) overruling appellants' joint and several demurrer to the first paragraph of appellee's answer.

It appears from the facts pleaded in the second paragraph of complaint and in the first paragraph of answer, which pleadings are in substance the same, that John Herron departed this life testate, April 30, 1895, seized in fee simple of certain described real estate in the city of Indianapolis of the value of $122,350, and possessed of personal property of the value of $105,-

360.35; that by the terms of his will which was probated May 17, 1895, Herron, after making certain small bequests, devised and bequeathed the remainder of his property to the Art Association of Indianapolis, Indiana, a voluntary association organized under the laws of this state, the object of which was, as stated in its articles of association, "the buying, holding and selling of real estate and the improvement thereof, for the purpose of maintaining a permanent art gallery in the city of Indianapolis, Marion county, Indiana, to promote and encourage the study of the literature of art; to establish and maintain an institution for instruction in the various branches of art; and to buy and sell works of art." The said testator left surviving him no heirs, lineal or collateral, except certain paternal and maternal cousins in the sixth degree of consanguinity who are the appellants herein. The items of the will which are material to a proper determination of the questions involved in this appeal are as follows:

"Item 5. For the payment of the foregoing bequests and legacies, debts and expenses of administration, and the residuary bequest in the item next following, I direct that my executor, by collections and sales, shall reduce to money my entire estate, real and personal, wherever situated, and for such purpose, I do direct and empower my executor, to sell all said personal estate at public or private vendue, at such time and upon such terms and in such manner as to him shall seem meet without notice or appraisement; and for like purpose I do direct, authorize and empower my said executor, to grant, bargain, sell and convey all of my real estate wherever situated, in such parcels or tracts for such price or prices, upon such terms of cash or credit, and upon such securities, to such person or persons, at such time and within such period as he may deem to the best interests of my estate; said sales, however, not to be either unreasonably hurried or delayed. Said sales, or any of them, may be without order of court, at public or

private vendue, and when at private vendue without notice, and when at public vendue upon such notice as my executor shall determine. My executor shall have power to make all necessary and proper conveyances, and deeds executed by him shall convey title as fully as though made by me in my lifetime.

"Item 6. After the payment of the special legacies, debts and expenses of administration, as provided in the previous items, I do give and bequeath all the residue and remainder of my estate, as the same shall be reduced to money, to the 'Art Association of Indianapolis, Ind.,' a corporation incorporated under the laws of the State of Indiana, on or about April 5, 1892, to be to said corporation absolutely and forever. Provided, however, and this bequest is upon the condition following: That the art gallery and art school of said association when established and maintained, shall each be designated and named by such name or names as will include the name of the testator as a part thereof, and the use of such name or names shall be perpetual, or so long as said art gallery and art school are severally maintained. The association may, however, if it prefer, adopt one name to include both gallery and school. My executor may pay to said association under this bequest the money realized by him from time to time, whenever he has received what is deemed by him proper evidence, that said association has adopted the name or names for the gallery or school as herein set forth. If said association shall not see fit to comply with the foregoing condition, or if, for any cause or reason, this bequest should fail or became invalid, then in either event I direct that my executor shall distribute the residue and remainder of my estate in this item sought to be bequeathed, to such religious and charitable societies, churches, organizations and corporations, located in the city of Indianapolis, Indiana, as he may select, and in such portions as he may determine, including or not, as he deems meet, those named in item third of this will."

Ambrose P. Stanton, who was named in the will as executor, qualified when the will was probated, and

served as such executor until his death, May 28, 1912. After he qualified, and before his death, the executor prepared and filed an inventory of all the property of his testator, and pursuant to the terms of the will sold some of the real estate which, together with the personal property, he converted into cash and turned over to the Art Association, such association having, on May 17, 1895, formally accepted the benefits named in the will, and notified the executor that it would establish the art school and art gallery under the name of the testator, and maintain the same in accordance with the terms of the will. Thereafter, and as soon as sufficient money was in the hands of the executor to accomplish that purpose, and a suitable site could be secured, such site was purchased, and an art gallery and an art school were established thereon, and named and designated respectively the "John Herron Art Gallery" and "John Herron Art School," each of which has since been maintained. The will was never contested, and is now in full force and effect.

Appellants proceed upon the theory that the will of John Herron is valid except as to item six thereof; but that the unsold real estate, the possession of which they seek to recover, being embraced within the devise set forth in that item, had vested in appellants at the death of the testator for the reason that the devise was void, as being in contravention of the statutes of this state (§§3998, 9723 Burns 1914, §§2962, 6027 R. S. 1881), which statutes prohibit the suspension of the absolute power of alienation of real estate and of the absolute ownership of personal property for a longer period than during the existence of a life, or lives, in being at the time of the death of the testator. If item six is void as contended by appellants this cause must be reversed, otherwise the judgment of the trial court must in all things be sustained.

It is fundamental that every man has the right to make his own will, and thus dispose of whatever property he may leave, the title to which was, at the time of his death, in his sole right. Courts have no more right to make wills for the dead than they have to make contracts for the living. A devise or bequest may, of course, be void, but it is the policy of the law to uphold every provision of a will if it can be done without violating established legal rules of construction. As said by Lord Hardwicke in *Sorresby* v. *Hollins* (1740), 9 Mod. Rep. 221, a "bequest is not void, and there is no authority to construe it to be void, if by law it can possibly be made good." The intention of John Herron as expressed in his will is not in doubt. It is clear that he intended to dispose of his entire estate; that no part of his estate should go to his heirs; and that with the exception of a few small bequests he intended that all of his property should go to the Art Association of Indianapolis, and that his name should be perpetuated as a part of the name of an art school and art gallery that should be organized and maintained by such art association. In accordance with that intention, a large part of his property was converted into cash, and for twenty-five years has been used by the association just as had been planned by the testator when he executed his will. Now, under such circumstances, must a court of justice set aside item six of John Herron's will, and, contrary to his desire and intention, as expressed in his will, divert the bulk of his estate to his heirs, who, as shown by their complaint, are of the sixth degree of consanguinity? Appellants contend that the law requires us to do just that thing.

Although the general intention of the testator as gathered from his will is quite clear, as we have above stated, his intention in reference to the conditions, and the de-

tails as to the manner of administration, as set forth in item six of the will, are not so definite. The construction of that item is the one matter for our consideration. Appellants contend that the bequest to the art association was upon a condition precedent; that is, if the art association should establish and maintain an art gallery and an art school, the name of each to include the name of the testator, then the art association would be entitled to the proceeds derived from the sale of testator's property by the executor, which proceeds would vest in, and become the property of, the art association, as such proceeds were delivered to it by the executor. If such is the proper construction to be placed upon the item in question, then, as claimed by appellants, the power of alienation of the real estate, and the absolute ownership of the personal property of the testator were suspended for a term not measured by a life, or lives, in being, and the bequest is void, being in violation of the Indiana statutory rule against perpetuities. It is the position of appellee, that, under the terms of item six of the will, the title to the property covered by such item vested in the art association at the time of the death of the testator, subject to be divested upon the failure of such beneficiary to establish and maintain an art school and an art gallery, the name of each of which should include the name of the testator, with a limitation over to churches and charity organizations to be selected by the executor, and that the statute prohibiting the suspension of the power of alienation and ownership of real and personal property has no application.

In construing a will, or any item or provision thereof, the primary object is to ascertain the intention of the testator. *Stieglitz* v. *Migatz* (1914), 182 Ind. 549, 105 N. E. 465. The intention of the testator must be ascertained from the language used in

the will; and, where the language used is reasonably susceptible of two constructions, one of which would violate an established rule of law, and thus destroy an intended provision, and the other would sustain the provision, the latter must be followed. *Dykeman* v. *Jenkines* (1913), 179 Ind. 549, 101 N. E. 1013, Ann. Cas. 1915D 1011; 5 R. C. L. 353. A construction of a will resulting in a partial intestacy will be avoided, unless the language of the will is such as to compel it. *Hardy* v. *Smith* (1919), 71 Ind. App. 688, 123 N. E. 438. If there is any doubt from the language of the will as to when the testator intended the property to vest in his residuary beneficiaries, it will be construed to vest the property at the testator's death. *French* v. *French* (1915), 58 Ind. App. 621, 108 N. E. 786. Where in one clause of a will a devise or bequest is made without condition, such devise or bequest cannot be taken away or cut down by subsequent words which are not equally clear and decisive of the testator's intention. *Myers* v. *Carney* (1908), 171 Ind. 379, 86 N. E. 400.

Before we examine the provisions of the will which are in controversy, it is well to note that the bequest made by item six thereof is charitable in its nature. Courts have universally held that bequests for the purposes of education are, in law, treated as charitable, and that the particular character of the education sought to be fostered does not in any way affect the validity of such bequests. 5 R. C. L. 330, and authorities there cited. It has also been held, and is the law, that a bequest of money as a fund for an art institute is a bequest to charity within the meaning of the authorities. *Almy* v. *Jones* (1891), 17 R. I. 265, 21 Atl. 616, 12 L. R. A. 414; *Mason* v. *Bloomington Library Assn.* (1908), 237 Ill. 442, 86 N. E. 1044, 15 Ann. Cas. 603. It is also well established, that legacies and devises to the uses of charity are entitled to peculiar favor,

and are regarded as privileged testaments, and will not be declared void if they can, by any possibility consistent with the law, be held valid. *Dykeman* v. *Jenkines, supra.*

Keeping in mind the nature of the gift and the above rules of construction, we shall proceed to examine the provisions of the will in controversy. The first sentence of item six is as follows: "After the payment of the special legacies, debts and expenses of administration, as provided in the previous items, I do give and bequeath all the residue and remainder of my estate, as the same shall be reduced to money, to the 'Art Association of Indianapolis, Ind.,' a corporation incorporated under the laws of the State of Indiana, on or about April 5, 1892, to be to said corporation absolutely and forever."

If the testator had stopped with this sentence, there would be no room for controversy. The language clearly expresses a present bequest, and forces the mind to but one conclusion, that is, that the testator intended to, and did, vest *eo instanti* the residue of his estate in the Art Association of Indianapolis, subject to the power of the executor to convert it into cash, as provided by item five of the will. The words, "as the same shall be reduced to money," are consistent with the provision to reduce the property to cash. These words can have no significance other than to fix a time when the art association should come into enjoyment of the money. By the language used in this first sentence of item six, the vesting is so clear and unequivocal that any postponement of the vesting cannot arise from mere inference or construction. Such postponement can only arise from language used which clearly and definitely destroys the vested estate—language which will force the mind to such conclusion. What language used by the testator so destroys the present vesting by the

words of the first sentence above quoted, and thus changes it into an estate which would contravene an established rule of law? Appellants contend that the language of that part of item six which follows the first sentence thereof, when taken in connection with the provision of item five requiring the executor to reduce all property of the estate to cash, bequeaths the cash to the art association only upon the condition precedent that it establish and maintain an art gallery and an art school, the name of each to include the name of the testator.

A correct interpretation of the proviso of item six will require a careful examination of the various conditions therein stated. In the first sentence of the proviso we find a condition "that the art gallery and art school * * * when established and maintained shall each be designated and named by such name or names as will include the name of the testator." The word "when" denotes time, and the expression "when established" fixes the time as after establishment. The expression "when maintained" carries with it the idea of continuing the particular name or names after they are established. Clearly this condition is not precedent to the vesting of the estate.

The next condition stated in the proviso is that "the use of such name or names shall be perpetual, or so long as said gallery and school are severally maintained." This is not a condition precedent. The word "perpetual" means for unlimited time in the future; and to say that the estate could not vest in the art association because of this clause is to court an absurdity. According to this view there could be no vesting at all, for the reason that the condition would be continually in the process of performance, but would never be fully performed so as to vest the estate.

The next clause of the proviso of item six of the will

is that the executor, "may pay to said association, under this bequest, the money realized by him from time to time, whenever he has received what is deemed by him proper evidence that said association has adopted the name or names for the gallery or school as herein set forth." By the terms of the will the executor is made the agent to carry out the directions of the testator. This is not a condition attached to the gift, but is merely an administrative direction to the created agency, and carries no evidence of the intention of the testator that the estate should not vest at his death. It is analogous to a devise in a will, with directions to the executor to sell and distribute the proceeds on the happening of a contingency. The language does not force the idea that the estate must not vest in the art association until some condition should be performed, but conveys the idea that the art association should furnish evidence to the executor of having complied with the condition required to be performed subsequent to the vesting of the estate in such beneficiary. The language also conveys the idea that if the art association shall fail or refuse to furnish the evidence that it has complied with the condition subsequent to vesting, then such estate shall be forfeited.

Following these conditions in item six, the testator says: "If said association shall not see fit to comply with the foregoing conditions, or if for any cause or reason this bequest should fail or become invalid" that his executor shall distribute the residue of his estate to such charities and churches of the city of Indianapolis as he may select.

Now if we consider item six as an entirety, that is if we consider the present bequest stated in the first clause in connection with the conditions which follow, and in connection with the final statement of the testator as to the disposition of the residue of the estate if the condi-

tions are not complied with, it seems reasonably clear that John Herron intended that the art association should have such residue at once upon his death, and that the art association should perpetuate his name, and if it did not continue to do so the property should go elsewhere. The purpose of the condition was to compel the continued use, and thereby the perpetuation, of the testator's name in connection with art. In their brief, appellants assert that by the conditions incorporated in item six of the will, the testator meant to say: "If you do not adopt my name, you cannot have one cent of my estate." The item in controversy will bear no such construction. The adoption of the name of the testator and the continued use of such name cannot be separated in the construction of this part of the will. John Herron did not intend that the estate should vest when the art association went through the formality of adopting his name, and that the association would then be at liberty to discontinue the use of the name. The perpetuation was the main consideration, and could not have been accomplished except by its continued use.

We therefore hold that by item six of his will John Herron intended to, and did, at the time of his death vest the residue of his estate in the Art Association of Indianapolis; and that the testator intended that the residue should vest subject to be divested if the association failed to adopt and continue to use his name in connection with the art gallery and art school when the same were established, and during the time they were being maintained.

It is contended by appellants, however, that even if item six must be construed so as to vest the residue of testator's estate in the art association at the testator's death, nevertheless, by reason of the provision in such item for the divesting of the estate and for the limitation over, the power of aliena-

tion was suspended. It is conceded by appellants that if the bequest had been upon condition subsequent with right of entry by testator's heirs, that there would have been no suspension in violation of the rule against perpetuities, for the reason that the heirs of the testator, could at all times have joined in a conveyance or transfer of the property. It is the theory and contention of appellants that the event upon which the estate given to the art association was to be determined might or might not occur within a life, or lives, in being at the time of the testator's death, and that, in as much as there is a limitation over upon breach of condition, the alienation of the property was suspended in violation of the statute, and that therefore the whole of item six is rendered void. It will be observed that the gift to the art association is not merely upon a condition subsequent. If it had been, then upon a breach of the condition, the heirs could have claimed the property. The gift sought to be created by the limitation clause of item six is in the nature of a conditional limitation,—there is nothing left for the heirs of the testator. By this limitation clause of his will, John Herron intended to, and did, make it impossible for his heirs to get any part of the residue of his estate, even though there should be a breach of the condition as to the use and perpetuation of his name. The primary gift to the art association is to charity, (*Mason* v. *Bloomington Library Assn.,* *supra*) and as we have held vested at the time of the testator's death. The limitation over was also to charity. It is well settled that the rule against perpetuities does not apply to gifts for charitable uses where the title vests immediately in charity. *Dykeman* v. *Jenkins, supra,* and cases there cited. Since the rule does not apply to devises and bequests to charity, it follows that if the gift is to charity in the first instance, then over to other charities upon the happening of a con-

tingency which may or may not take place within lives in being, as provided by the Indiana statutes, the limitation is valid. *Jones* v. *Habersham* (1883), 107 U. S. 174, 2 Sup. Ct. 336, 27 L. Ed. 401.

We therefore hold that appellee's demurrer to the second paragraph of complaint was properly sustained; and that appellee's second paragraph of answer sets forth a good defense to appellants' first paragraph of complaint, and that the demurrer thereto was properly overruled.

Judgment affirmed.