ISANOGEL CENTER, INC., Appellant–Plaintiff,

v.

FATHER FLANAGAN'S BOY'S HOME INC., d/b/a Girls and Boys Town, Appellee–Defendant.

No. 18A05–0502–CV–99.

Court of Appeals of Indiana.

Dec. 20, 2005.

Karl L. Mulvaney, Nana Quay–Smith, Candace L. Sage, Bingham McHale LLP, Indianapolis, for Appellant.

David K. Herzog, Jon Laramore, Catherine A. Meeker, Baker and Daniels LLP, Indianapolis, Scott E. Shockley, DeFur, Voran, Hanley, Radcliff & Reed, LLP, Muncie, for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Isanogel Center, Inc. ("Isanogel Center")[1] appeals the trial court's denial of its motion for summary judgment and grant of partial summary judgment in favor of Father Flanagan's Boys' Home, Inc., d/b/a Girls and Boys Town ("Boys Town").[2] At issue in this appeal is the interpretation of Ellen C. Isanogel's 1951 will, which left approximately 140 acres to Isanogel Center's predecessor to use "as a home or recreation grounds for the enjoyment of crippled or physically handicapped children and adults." Because there is no condition subsequent in Ellen Isanogel's will, Boys Town has no interest in the real estate, and the trial court erred by granting partial summary judgment in its favor. We therefore direct the trial court to enter summary judgment on this issue in favor of Isanogel Center. Also, because there is no evidence that Boys Town acted in malice when filing its notice of reversionary interest in the real estate, we direct the trial court to enter summary judgment in favor of Boys Town on Isanogel Center's slander of title claim.[3]

### Facts and Procedural History

The facts of this case are undisputed. On March 9, 1952, Ellen C. Isanogel died, leaving a will dated July 9, 1951, which provides in pertinent part:

ITEM VI

All the rest and residue and remainder of my estate, real, personal or mixed and whatever nature and wheresoever situate which I may own or have the right to dispose of at the time of my decease, in memory of the John T. and Sarah Jane Isanogel family. I give, devise and bequeath to the DELAWARE COUNTY SOCIETY FOR THE CRIPPLED, *Provided*, however, that said Society use the real property as a home or recreation grounds for the enjoyment of crippled or physically handicapped children and adults. My Executor is directed to make proper conveyance upon receiving an agreement from said Society to use said real estate for such purpose.

---

1. Isanogel Center is an Indiana non-profit corporation with its principal place of business in Delaware County.

2. Boys Town is registered in Indiana as a non-profit foreign corporation with its principal place of business in Boys Town, Nebraska.

3. We held oral argument in the Court of Appeals' courtroom on November 21, 2005. We commend counsel for their excellent presentations.

(a) If the DELAWARE COUNTY SOCIETY FOR THE CRIPPLED will not take such conveyance on such condition, within one year of my death, my Executor shall convey such property to any Society or Organization having purposes similar to those of said Society, provided that such Society or organization will agree to use said real property as a home or recreation grounds for the enjoyment of handicapped children and adults.

(b) If no such Society or Organization willing to take said real estate subject to such provision, is found within two years of my death, I then direct my executor to sell said real estate, and the rest of my property not otherwise specifically devised or bequeathed, I give, devise and bequeath as follows:

(1) FIVE HUNDRED DOLLARS ($500.00) to the MT. PLEASANT CEMET[E]RY ASSOCIATION, which maintains the cemet[e]ry where my family is buried. I desire that said bequest be added to the funds which I understand the Association has on deposit with the MUTUAL HOME & SAVINGS ASSOCIATION, of Muncie, Indiana, and that the interest from said fund be used for the purposes of the Association.

(2) One half (1/2) of the balance, I give, devise, and bequeath to the DELAWARE COUNTY SOCIETY FOR CRIPPLED, INC., and

(3) One half (1/2) to FATHER FLANAGAN'S BOY'S TOWN, at BOY'S TOWN, NEBRASKA, in memory of the JOHN T. and SARAH JANE ISANOGEL family.

Appellant's App. p. 10, 34–35 (formatting omitted) (emphasis in original). Following Ellen Isanogel's death, an estate was opened in Delaware Circuit Court.

In January 1953, the Delaware County Society for Crippled, Inc. ("DCSC") notified Charles Pieroni, the executor of Ellen Isanogel's estate, that it "agree[d] to use the real property of [Ellen Isanogel] as a home or recreation grounds for the enjoyment of crippled or physically handicapped children and adults" and "agree[d] to accept a conveyance of said real estate subject to such a condition." *Id.* at 38.

In March 1953, Pieroni petitioned the Delaware Circuit Court to approve his acceptance of DCSC's notice of intent to use Ellen Isanogel's real property in accordance with the terms of her will. The petition provided that DCSC "agree[d] to use said real estate of [Ellen Isanogel] for said purpose and agree[d] to accept a conveyance of said real estate subject to such a condition." *Id.* at 44. Boys Town filed a statement acknowledging the petition and agreeing to be bound by the court's order "as to the matters contained in said petition." *Id.* at 46. On March 7, 1953, the Delaware Circuit Court issued an order finding that DCSC "has made full and complete compliance with the terms of [Ellen Isanogel's] will as to the disposition of said real estate" and approving Pieroni's acceptance of DCSC's notice of intent. *Id.* at 48.

In August 1954, Pieroni, by Executor's Deed, transferred the real estate, which consisted of approximately 140 acres, to DCSC. The Deed provides that Pieroni conveyed the real estate "by authority of Item VI in the last will and testament of [Ellen Isanogel] recorded in Will Record 18 at pages 132–33 in the Office of the Clerk of the Delaware Circuit Court." *Id.* at 12, 50. Ellen Isanogel's estate was then closed. That same year, DCSC began using approximately fifteen of the 140 acres

to operate a day camp for children with disabilities.

Fourteen years later, in 1968, DCSC, by Warranty Deed, conveyed all of the real estate to Isanogel Center, its successor in interest.

In 1972, Isanogel Center filed a Petition for Instructions and for Authority to Sell Real Estate in the Delaware Circuit Court. Specifically, Isanogel Center sought to sell a thirty-seven acre portion of the real estate that was separated from the main parcel by approximately 1.5 miles. Isanogel Center alleged that it was impracticable to attempt to carry out the terms of the will in their entirety as it would lead to substantial impairment of the purpose for which Ellen Isanogel created the public trust. Isanogel Center did not notify Boys Town, but it served a copy of this petition on the Indiana Attorney General, who opposed it.

Nevertheless, the Delaware Circuit Court granted Isanogel Center's petition. Specifically, the court found that the "paramount purpose of the public charitable trust[4] created in Item VI of the Last Will and Testament of Ellen C. Isanogel, deceased, is to provide 'a home or recreation grounds for the enjoyment of crippled or physically handicapped children and adults.'" *Id.* at 67. The court acknowledged that at the time Ellen Isanogel executed her will, she "could not have anticipated the changed conditions of the value of the real estate ... brought about by the recent residential development in the immediate vicinity of the 37–acre farm ... nor could she have anticipated the increased costs of developing all of the acreage ... for a home or recreation grounds on two separate farms approximately 1 1/2 miles apart." *Id.* at 66–67. Accordingly, the court ordered that the "paramount purpose of this Trust will best be served by the sale of the [thirty-seven acre portion]" with the balance of the proceeds invested "in the development of the remaining 102 acres" or "in such income producing investments as it shall determine." *Id.* at 67–68.

Twenty years later, in 1992, Isanogel Center sold a small portion of the remaining 102 acres, this time without seeking judicial approval and again without notifying Boys Town. In 2003, Isanogel Center sold approximately eighty acres for residential development in two separate transactions, leaving only approximately fifteen of the original 140 acres.[5] Again, Isanogel Center did not seek judicial approval or notify Boys Town. In all, Isanogel Center has realized over one million dollars in proceeds from the various sales of the real estate. Isanogel Center has used these proceeds to support the programs held on the remaining fifteen acres.

After learning of Isanogel Center's various sales of the real estate from a Delaware County resident, Boys Town filed a Notice of Reversionary Interest with the Delaware County Recorder in which it

---

4. Although in 1972 Isanogel Center proceeded, and the trial court found, that Ellen Isanogel's will created a public charitable trust, we disagree. *See St. Mary's Med. Ctr. v. McCarthy*, 829 N.E.2d 1068, 1074–75 (Ind.Ct.App. 2005), *reh'g denied.* We also note that neither party on appeal argues that Ellen Isanogel's will created a public charitable trust.

5. To this day, Isanogel Center operates "a one or two week summer residential camp program for children and adults with disabilities for ages 8–Adult." "Camp Isanogel," *available at* http://www.isano gelcenter.org/ (last visited Nov. 22, 2005). In addition, weekend sessions and activities are available year around. "Isanogel Center is located approximately four miles west of Muncie, Indiana on 15 acres of meadows and woodlands." "Location," *available at* http://www.isano gelcenter.org/ Location.htm. (last visited Nov. 22, 2005).

claimed an interest in the real estate as a remainderman pursuant to Item VI of Ellen Isanogel's will. Upon learning of this notice, Isanogel Center asked Boys Town to release its Notice of Reversionary Interest, which it alleged clouded Isanogel Center's interest in the real estate.

When no action was taken, Isanogel Center filed a Complaint for Slander of Title against Boys Town in Delaware Circuit Court. Specifically, Isanogel Center alleged that Boys Town's Notice of Reversionary Interest "improperly clouded and slandered the title to the Real Estate held by Isanogel Center." *Id.* at 29. Boys Town filed a Counterclaim. In particular, Boys Town asserted that it was entitled to one-half of the proceeds of the prior sales of the real estate, alleging that Isanogel Center had been unjustly enriched and/or converted Boys Town property. It also asked for a declaration that it was entitled to one-half of the proceeds of any future sales of the real estate.

Thereafter, Boys Town filed a Motion for Partial Summary Judgment on the following issue: Whether Ellen Isanogel's will "should be enforced as the testator intended, with the result that Boys Town is entitled to a portion of the proceeds from Isanogel [Center]'s sale of portions of the property, given that the property was bequeathed by Ms. Isanogel subject to the condition that it be used 'as a home or recreation grounds for the enjoyment of crippled o[r] physically handicapped children and adults.'" *Id.* at 113. Isanogel Center filed a Cross–Motion for Summary Judgment on its slander of title claim. The trial court later held a hearing on these summary judgment motions.

In December 2004, the trial court issued extensive findings of fact, conclusions, and an order denying Isanogel Center's motion for summary judgment and granting Boys Town's motion for partial summary judg-

ment. Specifically, the court found that Ellen Isanogel's intent was that if the real estate—at any time—was not being used for the purpose that she directed in Item VI of her will but rather sold, then she wanted the proceeds from the sale to be shared equally (after a small payment to the Mount Pleasant Cemetery Association) between Isanogel Center and Boys Town. Accordingly, the court concluded, "Boys Town is entitled to one-half of the proceeds of sales of the Real Estate (after payment of $500 to the Mount Pleasant Cemetery Association), such amounts to be determined in further proceedings in this action." *Id.* at 21. Because less than all the issues had been decided, the trial court—at Isanogel Center's request—certified its December order as a final judgment and stayed the proceedings pending this appeal.

## Discussion and Decision

Isanogel Center appeals the trial court's denial of its motion for summary judgment and grant of partial summary judgment in favor of Boys Town. Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Avant v. Cmty. Hosp.*, 826 N.E.2d 7, 10 (Ind.Ct.App.2005), *trans. denied.* When material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts. *Id.* When there are no disputed facts with regard to a motion for summary judgment and the question presented is a pure question of law, we review the matter de novo. *Id.*

### I. Boys Town's Motion for Partial Summary Judgment

■ Isanogel Center contends that the trial court erred in granting partial sum-

mary judgment in favor of Boys Town. Specifically, Isanogel Center argues that Ellen Isanogel did not create a condition subsequent in her will and that when DCSC took the real estate subject to the condition in Item VI of her will, Boys Town lost any expectant interest in the real estate. Boys Town, on the other hand, argues that even though Ellen Isanogel did not provide in her will for the exact situation that occurred here, her intent—if the real estate was ever sold—was to divide the proceeds between DCSC (now Isanogel Center) and Boys Town. Resolution of this issue turns on the construction of Ellen Isanogel's will.

 "The paramount objective in construing a will is to determine and give effect to the testator's true intent as expressed in the will." *In re Estate of Kirkendall,* 642 N.E.2d 548, 550–51 (Ind.Ct. App.1994). The plain and unambiguous purpose and intention of the testator must be determined only from the terms of the instrument itself considering the same without reference to the whole instrument and without taking individual clauses out of context. *St. Mary's Med. Ctr., Inc. v. McCarthy,* 829 N.E.2d 1068, 1073 (Ind.Ct. App.2005), *reh'g denied.* The four-corners' rule has long been the law in Indiana and requires that, as to any matter expressly covered by a written instrument, the provisions therein—if unambiguous—determine the terms of the instrument. *Id.*

Item VI of Ellen Isanogel's will provides:

I give, devise and bequeath to the DELAWARE COUNTY SOCIETY FOR THE CRIPPLED, *Provided,* however, that said Society use the real property as a home or recreation grounds for the enjoyment of crippled or physically handicapped children and adults. My Executor is directed to make proper conveyance upon receiving an agreement from said Society to use said real estate for such purpose.

(a) If the DELAWARE COUNTY SOCIETY FOR THE CRIPPLED will not take such conveyance on such condition, within one year of my death, my Executor shall convey such property to any Society or Organization having purposes similar to those of said Society, provided that such Society or organization will agree to use said real property as a home or recreation grounds for the enjoyment of handicapped children and adults.

(b) If no such Society or Organization willing to take said real estate subject to such provision, is found within two years of my death, I then direct my executor to sell said real estate, and the rest of my property not otherwise specifically devised or bequeathed, I give, devise and bequeath as follows:

(1) FIVE HUNDRED DOLLARS ($500.00) to the MT. PLEASANT CEMET[E]RY ASSOCIATION, which maintains the cemet[e]ry where my family is buried. I desire that said bequest be added to the funds which I understand the Association has on deposit with the MUTUAL HOME & SAVINGS ASSOCIATION, of Muncie, Indiana, and that the interest from said fund be used for the purposes of the Association.

(2) One half (1/2) of the balance, I give, devise, and bequeath to the DELAWARE COUNTY SOCIETY FOR CRIPPLED, INC., and

(3) One half (1/2) to FATHER FLANAGAN'S BOY'S TOWN, at BOY'S TOWN, NEBRASKA, in memory of the JOHN T. and SARAH JANE ISANOGEL family.

Appellant's App. p. 10, 34–35 (formatting omitted) (emphasis in original). The plain

and unambiguous language of the will provides that if DCSC agreed to use the real estate as a home or recreation grounds for physically handicapped people, then Pieroni was directed to convey the land to DCSC. However, if DCSC did not agree to take the conveyance on such condition within one year of Ellen Isanogel's death, then Pieroni was directed to convey the real estate to another organization having a similar purpose provided the other organization agreed to use the real estate as a home or recreation grounds for physically handicapped people. However, if no organization was willing to take the real estate subject to such condition within two years of Ellen Isanogel's death, then Pieroni was directed to sell the real estate and, after giving $500.00 to Mt. Pleasant Cemetery Association, divide the proceeds between DCSC and Boys Town. It is apparent that the conditional language in the will is directed to determining who receives the conveyance in the two years following Ellen Isanogel's death.

The record shows that DCSC agreed to take the conveyance of the real estate on such condition and that Pieroni, by Executor's Deed, conveyed the real estate to DCSC in fee simple absolute.[6] Therefore, the other contingencies simply never came into play. Nevertheless, Boys Town argues that although Ellen Isanogel did not provide in her will for the exact situation that occurred here—that is, that DCSC (now Isanogel Center) would use only part of the real estate as a home or recreations grounds for the disabled and would sell the remainder of the real estate—she intended to divide the proceeds from the sale of any unused real estate between DCSC (now Isanogel Center) and Boys Town. In essence, Boys Town argues that Ellen Isanogel's will contains a condition subsequent.

 Conditions subsequent are not favored in the law and always receive strict construction. *St. Mary's,* 829 N.E.2d at 1075 (citing *Ebenezer's Old People's Home of Evangelical Ass'n of Ebenezer, N.Y. v. South Bend Old People's Home,* 113 Ind.App. 382, 48 N.E.2d 851, 854 (1943)).

> [A]lthough no definite or particular form of expression is absolutely essential to the creation of a condition subsequent, it must be manifest from the terms of the will that the devise or bequest was made on condition and the absence of the words usually used for such purpose is significant.

*Id.* (quoting *Ebenezer's,* 48 N.E.2d at 854). A condition subsequent will not be implied from a mere declaration that the grant or devise is made for a special purpose. *Id.* at 1076 (citing *Ebenezer's,* 48 N.E.2d at 854). The clear majority rule is "that nothing short of express provisions for forfeiture and either a reverter, a gift over or a right to retake the property in the donor or his heirs would enable a donor to effectively impose a condition subsequent." *Id.* (quoting George Gleason Bogert & George Taylor Bogert, *The Law of Trusts and Trustees* § 324 p. 392 (1992)).

Turning to Ellen Isanogel's will, we note that it contains nothing to indicate the required duration that DCSC (now Isanogel Center) had to use the real estate as a home, or recreation grounds for the dis-

---

6. Boys Town argues that Pieroni did not transfer the real estate in fee simple absolute. In support, Boys Town points to the Executor's Deed, which provides that Pieroni "by authority of Item VI in the last will and testament of [Ellen Isanogel] recorded in Will Record 18 at pages 132–33 in the Office of the Clerk of the Delaware Circuit Court does hereby convey" the real estate to DCSC. Appellant's App. p. 12, 50. We find this language to be the *source* of Pieroni's authority to convey the real estate, not a *restriction* on the conveyance.

abled. Ellen Isanogel's will also contains no reverter language indicating what should happen if DCSC (now Isanogel Center) either did not use *all* the real estate as a home or recreation grounds for the disabled or sold some of the real estate. This is in stark contrast to the condition subsequent we found in the will in *Herron v. Stanton*, 79 Ind.App. 683, 147 N.E. 305 (1920).

There, John Herron's will devised assets for the creation of an art gallery and school in Indianapolis upon condition that the gallery and/or school be perpetually named for him. In the event the gallery and/or school no longer wanted to use Herron's name, the will provided that it would be divested of the assets, which would then be distributed to other charitable institutions in Indianapolis. This Court held that the devise was a valid charitable gift with a valid condition subsequent or conditional limitation upon the gift. *Herron*, 79 Ind.App. at 695–96, 147 N.E. at 308.

Here, there is simply no forfeiture or reverter language in Ellen Isanogel's will. On this point, the *St. Mary's* court stated:

> It has been said elsewhere "that when the language of an instrument does not clearly indicate the grantor's intention that the property is to revert to him in the event it is diverted from the declared use, the instrument does not operate as a restraint upon alienation of the property, *but merely expresses the grantor's confidence that the grantee will use the property so far as may be reasonable and practicable to effect the purpose of the grant.*"

829 N.E.2d at 1076 (emphasis added) (quoting *Gray v. Harriet Lane Home for Invalid Children*, 192 Md. 251, 64 A.2d 102, 110 (1949)). Given the disfavor of conditions subsequent and the absence of clear reverter language or the required

duration that all the real estate must be used as a home or recreation grounds for the disabled, the most that can be said of Ellen Isanogel's devise to DCSC was that she expressed confidence in DCSC (now Isanogel Center) that it would use the real estate so far as may be reasonable and practicable to effect the purpose of the grant. *See id.* Indeed, to this day Isanogel Center operates a camp for disabled children and adults on the remaining fifteen acres. As the *St. Mary's* court stated, "although charitable gifts should be encouraged so far as possible, charities themselves should not be bound to one particular use of bequeathed property for multiple generations unless they are on clear notice that such is a requirement of the bequest." *Id.* at 1076–77. Isanogel Center simply was not on clear notice.

■ In any event, we note that even if this was a valid condition subsequent, Isanogel Center has substantially complied with the condition. *See id.* at 1077. That is, for over fifty years Isanogel Center has operated a camp for disabled children and adults on fifteen acres and has used the proceeds from the sales of the remaining acres to support its programs.

Because there is nothing in Ellen Isanogel's will indicating the existence of a valid condition subsequent on the bequest to DCSC, Boys Town does not have any interest in the real estate. Accordingly, the trial court erred in granting summary judgment on this issue in favor of Boys Town. We therefore reverse the trial court on this issue and remand for the entry of summary judgment in favor of Isanogel Center.

### II. Isanogel Center's Motion for Summary Judgment

■ Isanogel Center next contends that the trial court erred in denying its motion for summary judgment on its slander of title claim. To succeed on a claim for slander of title, the plaintiff must prove

that false statements were made, with malice, and that the plaintiff sustained pecuniary loss as a necessary and proximate result of the slanderous statements. *Trotter v. Ind. Waste Sys., Inc.*, 632 N.E.2d 1159, 1162 (Ind.Ct.App.1994), *reh'g denied.* The essence of slander of title is the making of an unfounded claim concerning the ownership or security interest in property of another that results in financial loss to the rightful owner. *Id.* Malicious statements are those made with knowledge of their falsity or with reckless disregard for whether they are false. *Hossler v. Hammel*, 587 N.E.2d 133, 134 (Ind.Ct.App. 1992).

■ On appeal, Isanogel Center asserts: "Because Boys Town knew it had no right to an interest in the property, the statements it made in its Notice of Reversionary Interest were false. Furthermore, these false statements were made maliciously because they were made with knowledge of their falsity." Appellant's Br. p. 44. We find that the question of whether Boys Town has an interest in the real estate is not an easy one to answer. In fact, the trial court below found in favor of Boys Town. Given this, Isanogel Center cannot prove that Boys Town made the statements in its Notice of Reversionary Interest with knowledge of their falsity or with reckless disregard for whether they are false. As a matter of law, Boys Town did not make the statements with malice. We therefore direct the trial court to enter summary judgment on Isanogel Center's slander of title claim in favor of Boys Town.

Reversed and remanded.

SULLIVAN, J., and FRIEDLANDER, J., concur.

