JULIAN, ADMINISTRATOR, *v.* McADAMS, TRUSTEE, ET AL.

[No. 12,671. Filed March 9, 1927.]

1. WILLS.—*Fund bequeathed to a trustee for benefit of two* *grand-nephews, to be used in educating, them, with reversion* *to testator's heirs on specified condition, vested in beneficiaries* *on testator's death and went to their estates at their death.*— A will bequeathing to the executor a specific sum "in trust" for two of the testator's grand-nephews, to be invested for their benefit and the income applied to their preliminary schooling and the principal "to be expended in paying their expenses at Purdue University," vested in the beneficiaries the equitable title to the sum bequeathed, and, upon the death of the beneficiaries before the money had been used for their education, the fund went to their estates, although, coupled with the bequest, was a provision that if the purpose of the bequest failed "on account of such boys' failure to respond to the opportunity given them," the balance remaining thereof should "revert" to the testator's heirs. p. 642.

2. WILLS.—*Bequest to executor "in trust" for two boys, to be* *used in educating them, not defeated by their deaths before all* *the fund had been used or their education completed, notwith-*

*standing. a provision that it should revert on their failure to "respond to the opportunity given them."*—Where a will bequeathed a specified sum to a trustee to be used in giving two named beneficiaries a university education, but provided that if the purpose of the bequest failed on account of their failure to "respond to the opportunity given them," then any unused portion of the fund should "revert" to the testator's heirs, nothing but their acts of commission or omission in failing or refusing to accept the educational advantages provided for them could deprive them of their interest in the fund, and where it became impossible to apply it to the purpose for which it was created because of the death of the beneficiaries, the remaining portion of the fund became the property of their estates.   p. 645.

From Warren Circuit Court; *Burton B. Berry,* Judge.

Action between Isaac C. Julian, administrator of the estates of Vernon and Rupert Julian, and Charles V. McAdams, executor of the will of William C. Smith, and trustee thereunder, for the construction of said will. From the judgment rendered, the administrator appeals. *Reversed.*   By the court in banc.

*John J. Hall* and *Dale F. Stansbury,* for appellant.

*C. V. McAdams* and *Harry P. Schultz,* for appellees.

REMY, J.—The last will of William C. Smith, including codicil, consists of fifty-seven items, and disposes of real and personal property valued at many thousands of dollars.   Item 43 is a residuary clause by which the testator gives to his heirs at law a life interest in the residuary estate, with remainder to the heirs of the residuary legatees.   Item 12 of the codicil provides:

"I bequeath to my executor in trust for Rupert and Vernon Julian, sons of my nephew, Isaac Julian, the sum of five thousand dollars, to be by my trustee invested for their benefit and the income applied to assist in their preliminary educational expenses while preparing for the university, and the principal of said sum to be expended in paying their expenses at Purdue University, * * *. If the purpose of this bequest fails on account of such boys' failure to respond to the opportunity

given them, then the said sum shall revert to my heirs at law."

By item 45, the testator appointed Charles V. McAdams as executor of his will and trustee for numerous specific trusts created by the instrument.

The testator died October 1, 1911, and on October 7, 1911, McAdams qualified, assumed the duties of executor and trustee, and since that time has been, and now is, the acting trustee of each of the trusts created by the will. At the time of the death of the testator, Vernon Julian and Rupert Julian, named as beneficiaries in item 12 of the codicil, were aged respectively seven and twelve years. Vernon was a student in the public schools in the town of Williamsport from October 7, 1911, till his death, which occurred January 21, 1923. Rupert was a student of the public schools of Williamsport continuously, each school year, from October 7, 1911, until his graduation from high school in June, 1917. During the time Vernon and Rupert were attending the public schools, McAdams as trustee of the trust created by item 12 of the codicil, advanced from the trust fund sufficient money to pay all school expenses incurred by the trustee in keeping the boys in school. In September, 1919, Rupert matriculated as a student of Purdue University, and continued as such student until his death January 29, 1923, all of his expenses at the university being paid by the trustee. At the time of Rupert's death, there remained in the hands of the trustee, of the principal of the trust fund created by item 12, the sum of $2,500; also interest accumulations amounting to $310.67. The question arose as to who was entitled to the $2,810.67, and this suit, a suit asking for a construction of item 12 of the codicil of the will, was instituted. The trial court held the proper construction of the will to be, that upon the death of

Vernon and Rupert Julian, the balance of the trust fund created by item 12 of the codicil "became the property and money, share and share alike, of the heirs at law of the testator."

Three constructions are urged: (1) Testator's heirs at law ask that the judgment of the trial court be affirmed; (2) the trustee maintains that the unused portion of the fund in the trust created by item 12 of the codicil became a part of the residuary estate, under item 43 of the will; and, (3) Isaac N. Julian, administrator of the estate of Vernon Julian and as administrator of the estate of Rupert Julian, insists that the money remaining in the fund belongs to the estates of the boys.

The most important question to be determined is as to whether item 12 of the codicil gave to the beneficiaries named therein an interest which vested upon the death of the testator. It is the contention of the heirs at law and also of the trustee that no interest in the estate vested in the beneficiaries at the time of the testator's death. On the other hand, Isaac N. Julian, as legal representative of the deceased beneficiaries, makes the contention that upon the death of the testator the equitable title of the estate at once vested in the beneficiaries named. We concur in the latter view.

The first clause of item 12 is as follows:

"I bequeath to my executor in trust for Rupert and Vernon Julian, sons of my nephew Isaac Julian, the sum of $5,000 to be by my trustee invested for their benefit."

If item 12 had consisted of those words and nothing more, there could be no controversy. Those words standing alone would, on the death of the testator, vest in the beneficiaries the equitable title to the sum bequeathed, and, upon the death of the beneficiaries, the fund would go to their estates.

*Hayward* v. *Rowe* (1905), 190 Mass. 1, 76 N. E. 286; *Chauncey* v. *Francis* (1902), 181 Mass. 513, 63 N. E. 913; *Powers* v. *Rafferty* (1903), 184 Mass. 85, 67 N. E. 1028. See, also, *Hancock, Trustee,* v. *Maynard* (1920), 72 Ind. App. 661, 676, 126 N. E. 451. It is argued, however, that the words which follow the clause above quoted are sufficient to show that no interest in the fund was vested in the beneficiaries named in the item. By the language which immediately follows the clause, the testator directs that the income of the fund bequeathed to the trustee in trust for Rupert and Vernon Julian be applied "to assist in their preliminary educational expenses while preparing for the university, and the principal of said sum be expended in paying their expenses at Purdue University." This provision does not have the effect of taking away or limiting the absolute interest of the beneficiaries, which is clearly indicated by the language of the previous clause; it is nothing more than a direction to the trustee as to how the income and principal of the trust fund were to be applied. In the case of *Kelly* v. *Kelly's Administrator* (1901), 3 Penn. (Del.) 286, 50 Atl. 215, the Supreme Court of Delaware had under consideration a case very similar to the case at bar. In that case the testator made the following bequest: "I leave or bequeath for the care of my baby $500." The infant beneficiary died a short time after the will was probated, no part of the legacy having been used for its care. It was contended, as here, that the bequest had been made for· a particular purpose, and not having been used for that purpose the legacy lapsed. The court held that the bequest vested in the child upon the death of the testator, and upon the death of the child went to its heirs. In the course of its opinion, the court correctly stated the law to be: "Where a legacy is given to a person for a particular purpose to which it becomes impossible to apply

it without the fault of the legatee, the legacy will vest on the testator's death and the legatee will be entitled to the money because it is to be presumed that the property was intended for the benefit of the legatee at all events, and that the mode of its application was a secondary consideration and independent of the gift."

In *Gough* v. *Bult* (1847), 16 Sim. 323, 60 English Reports Reprint 789, the testator ordered and empowered the trustees named in his will to sell part of the trust property, and out of the proceeds to pay not exceeding 2,000 pounds to his son for setting the son up in business. The son survived the testator, and afterwards died without having entered into business, and without the 2,000 pounds or any part thereof being paid to him. The court held that the legatee was given a vested interest in the 2,000 pounds, which upon his death went to his heirs. In *Presant* v. *Goodwin* (1860), 2 L. T. N. S. 57, the testator made his will directing that after payment of his debts and certain legacies, the remainder of his estate be appropriated to the education of the children of testator's sister, directing that the boys should each be given a classical education, and the girls so educated as to prepare them for the teaching profession. The testator lived thirty-nine years after making his will, and the children for whose education he had provided were then all past school age. The holding of the court was that the bequest which, under the terms of the will was to have been used in the education of the children, was an absolute gift, which upon the death of the testator went to them. In *Barlow* v. *Grant* (1684), 1 Vern. 255, 23 English Reports Reprint 451, a legacy of thirty pounds was given to an infant to bind him as an apprentice. The infant died before he attained a competent age to be placed out as an apprentice; and the court held that the legacy should go to the child's estate. The author of Jarman, Wills,

states the law to be: "Where the purpose of the gift is the benefit solely of the donee himself, he can claim the gift without applying it to the purpose, and that, it is conceived, whether the purpose be in terms obligatory or not." 1 Jarman, Wills 397. To the same effect, see, *Cope* v. *Wilmot* (1772), Ambler 704, 27 English Reports Reprint 457; *Barton* v. *Cooke* (1800), 5 Ves. 461, 31 English Reports Reprint 682; *Bayne* v. *Crowther* (1855), 20 Bevan 400; *Lewes* v. *Lewes* (1848), 16 Sim. 265.

The concluding words of item 12 are: "If the purpose of this bequest fails on account of such boys' failure to respond to the opportunity given them, 2. then the said fund shall revert to my heirs at law." An analysis of this clause will assist in arriving at the intention of the testator. It is to be observed that the provision for a reversion is not couched in general terms. The testator did not say, "If the bequest fails for any reason." There was to be a reversion only upon one contingency, the "boys' failure to respond to the opportunity given them." In no other way could the right of the beneficiaries be defeated. What did the testator have in mind when he used the words "failure to respond to the opportunities given them?" Did he mean to say that, if the boys should die before the fund had all been expended for their education, the remainder should revert to the testator's heirs at law? Clearly the language will not bear that construction. It is apparent that the testator contemplated some voluntary act or acts of commission or omission on the part of the beneficiaries by which they would either refuse the educational advantages provided for, or put themselves in a position of being unable to receive them. They might, for example, refuse to go to school, or they might go, but, failing to meet the school requirements, be compelled to leave before completing

the course of study. If the testator had intended that the death of the beneficiaries should defeat their right to the benefit of the bequest, it would have been an easy matter so to have stated. The will makes no provision for a reversion except only the failure of the boys "to respond to the opportunity given them." The purpose of the bequest did not fail on account of the boys' failure to respond to the opportunity given, within the meaning of the clause. The pleadings show; and it is conceded by all the parties to the suit, that as long as the boys lived they fulfilled, as far as was within their power, all the requirements provided for, and that they were prevented from receiving further benefits of the trust fund only because of their untimely death. The use of the word "revert" in the clause under consideration is significant. The reversion (which implies that there had been a vesting) was to take place only upon the one contingency stated. The bequest was for the benefit of the boys. It could have been defeated in the one way provided by the testator. It was not so defeated. Suppose the boys had lived and had taken advantage of the opportunity given, completing their preliminary and university education, but, by practicing economy, only one-half of the fund had been consumed, who would say that, upon their graduation from the university, the remaining portion of the fund would have passed to the testator's heirs at law or to his residuary legatees? We hold that, upon the death of the testator, the beneficiaries of the trust created by item 12 of the codicil of the will took a vested interest in the trust fund, and that upon the death of the beneficiaries, the remaining portion of the fund became the property of their estates.

Judgment reversed, with instruction that the court render judgment in accordance with this opinion.

Dausman, J., absent.