IN RE ESTATE OF MARSHALL BUNTING.

R. M. MOEHN, GUARDIAN OF JACK STANFORD CASE et al., Plaintiffs, v. CLARA BUNTING, Executrix, et al., Appellants; H. L. TINLEY, Administrator, Intervenor, Appellee.

No. 42871.

JULY 17, 1935.

E. A. Wissler, for appellants.

Helmer & Minnich, for intervenor-appellee.

POWERS, J.—Marshall Bunting died testate on July 1, 1925, survived by his widow, Clara Bunting, and seven daughters and two sons. By the terms of his will, which was dated June 14, 1922, he gave $5,000 absolutely to each of six of his daughters. The provision in controversy here is with reference to the other daughter, Charlotta Case. It is item 5 of the will, and is as follows:

"I will devise and bequeath to my wife Clara Bunting the sum of Five Thousand Dollars in trust for the use and benefit of my daughter Charlotta Case, she to pay to said daughter the income from said fund and so much of the principal from time to time as she, my wife, shall deem advisable for the care and support of my said daughter."

Subject to these seven bequests, the residue of the estate was devised and bequeathed to his widow for life, with the remainder to his two sons to be equally divided between them. Charlotta Case died in 1926, while the estate of Marshall Bunting was being administered and before the trust fund had been set up, although the widow of testator, who was executor of his estate and the person made trustee under item 5 of the will, had made some expenditures for and on behalf of the daughter, Charlotta Case. The administrator of the estate of Charlotta Case claims this bequest on the theory that the bequest is an absolute one to Charlotta Case, and that the provision for a trusteeship was merely for its custody and control during the lifetime of Charlotta Case. The representatives of the estate of Marshall Bunting resist the claim on the theory that Charlotta Case, the beneficiary, never acquired any interest in said fund, and that item 5 creates a trust for a specific purpose, namely, to

supply care and support for Charlotta Case, and that that purpose has now been fulfilled or made impossible of performance, and by reason thereof the ownership of the fund remains in the estate of Marshall Bunting and passes under the residuary clause of his will. The question thus presented is one of interpretation of the will.

It is elementary that the sole function of the court in such a situation is to ascertain the testator's intention and carry out that intention or purpose if no law is thereby violated. To discover the intention, the court should take the will by its four corners and examine the entire document. Moreover, the court may consider the circumstances existing at the time the will was drawn. As sometimes expressed, the court should put itself in the environment which surrounded the testator when he made the will and read the language of the will in the light of such environment as an aid to discovering the intention of the testator. When confronted with such a problem, precedents and authorities giving a particular meaning to particular words are of very little value because the language used in wills and the circumstances under which used are so varied that the decisions with reference to the meaning of certain language under one set of circumstances are of little value in determining what the testator meant by the use of different language under different circumstances. Sir William Jones expressed this thought by the epigram "that no will has a brother." Each case must be determined upon the facts of that particular case.

It must be conceded that any effort to arrive at the intention of a testator not expressed is beset by many uncertainties and hazards, and that any conclusion which a court may reach must be arrived at with the recognition that there is a possibility that it may be doing violence to the actual intention of the testator. The fact that the able and learned trial court reached a conclusion in this case at variance with the conclusion which we have arrived at illustrates how minds may reach a different destination when required to grope in the dark and in an area where there are no satisfactory signposts to definitely point the way. A court in reaching a conclusion in such a situation is forced to do so with the knowledge that the guides are not very certain, definite, or satisfactory. In other words, the court must proceed more or less in the dark and without satisfactory light. The statement of Lord Coke is as true today as it was when uttered

centuries ago: "Wills and the construction of them do more perplex a man than any other learning; and to make a certain construction of them, this *excedit jurisprudentum artem.*"

It is the conclusion of this court, from a reading of the will in the light of the circumstances under which it was written, that Charlotta Case acquired no vested interest in the fund created by item 5 of the will, and that upon her death no interest in said fund passed to the representatives of her estate. We have been led to such conclusion by the following considerations:

1. Charlotta Case had married prior to the time the will was made. Her husband, apparently, was unable to support her. In any event, she and her husband were constantly harassed by reason of unpaid bills and accounts for the support of the family. Marshall Bunting had come to her aid in the payment of the rent of a home and supplies for the home in order that she might not suffer unduly for lack of proper maintenance and support prior to the making of the will. Under such circumstances, if any money were left to her, it would be immediately seized by creditors. The obvious purpose the testator had in mind in creating the trust was to make some provision for the support and maintenance of Charlotta Case, but at the same time accomplish that purpose in such a manner as to make it impossible for her creditors to ever reach the fund. It seems to us that to hold that the fund should now be paid to her administrator and should, therefore, be made available for the payment of her creditors is to defeat the obvious purpose and intention of the testator in creating, under the circumstances here, the trust set out in item 5 of the will. Such a purpose was not only perfectly lawful, but it was perfectly natural. The testator was under no obligation to these creditors. He was under no duty to leave his property so that they might be satisfied. He had a right to so arrange the disposition of his property that his children would get the direct benefit of it and that their creditors would get no benefit. On the other hand, he was the father of this woman. That he had the natural and normal paternal interest in her is clearly shown. During life he did not undertake to pay the debts which she and her husband had contracted, but he did make certain that she had a place to live by paying house rent, and he did pay for some of the things which went into the home that she might not suffer for want of proper maintenance. Is it not logical to assume that he wanted to have that same policy continued after his

death, and therefore provided his wife, the mother of that child, with funds to continue that policy? The policy was not to pay the debts of the daughter, but to see, so far as possible, that she did not suffer because of the lack of the means of proper sustenance and support. We think the circumstances surrounding the making of this will indicate that it was the intention of the testator that Charlotta Case should not become vested with any absolute or inheritable interest in the fund, but that the fund was given to the mother, Clara Bunting, with the intention and for the purpose of supplying the mother with a fund that might be used by her as needed to supply the physical comforts of life to Charlotta Case while she lived.

2. Moreover, the language employed in the will is not only consistent with that intention, but lends further color to it. It will be noticed that the trustee has full discretion as to the expenditure of the entire fund. A casual reading of the provision might suggest that an absolute right to the interest was vested in Charlotta Case. A more careful analysis of the language used, however, will dissipate that impression. The language of the will with reference to the expenditure of the fund by the trustee is as follows:

"she, [trustee] to pay to said daughter the income from said fund and so much of the principal from time to time as she, my wife, shall deem advisable for the care and support of my said daughter."

If we leave out the provision with reference to authority to expend a part of the principal, the phrase will then read as follows:

"she [trustee] to pay to said daughter the income from said fund * * * from time to time as she, my wife, shall deem advisable for the care and support of my said daughter."

Thus read, it is clear that the trustee has discretion with reference to the expenditure of the interest or income. It can hardly be claimed that the addition of the words "and so much of the principal" after the words "income from said fund" can have the effect of changing the meaning of the phrase so far as it relates to the income. It thus becomes clear that the purpose was to avoid the vesting of any absolute right in Charlotta Case.

Moreover, the bequest was not made to her. It was made to

her mother, Clara Bunting, the widow of the testator. True, the provision says that it is to be in trust for the use and benefit of Charlotta Case, but it is particularly specified in the same sentence how it is to be used by the trustee for her use and benefit. It is provided that the trustee at her discretion may use said fund "for the care and support of my said daughter". If the testator had said "for the care and support of my said daughter during her lifetime", it could hardly be argued that any right to the fund vested in the personal representatives of the daughter after her decease, yet the addition of the words "during her lifetime" would not, in fact, add anything to the language used, because the fund could not be used for her care and support except during her lifetime. The very nature of the expenditures to be made necessarily limited their making to the term of the natural life of the daughter.

3. The appellee relies entirely upon, and the trial court seems to have been largely influenced by, decisions of this and other courts to the effect that the trusts under consideration in those cases were terminated upon the death of the beneficiary and the corpus of the trust estate passed as a part of the beneficiary's estate. See Meek v. Briggs, 87 Iowa 610, 54 N. W. 456, 43 Am. St. Rep. 410; Karolussen v. Christianson, 187 Iowa 744, 174 N. W. 482; Toner v. Collins, 67 Iowa 369, 25 N. W. 287, 56 Am. Rep. 346; Chauncey v. Francis, 181 Mass. 513, 63 N. E. 913; Kelly v. Jefferis, 3 Pennewill (Del.) 286, 50 A. 215; Julian v. McAdams, 85 Ind. App. 639, 155 N. E. 524; Clyde v. Lake, 78 N. H. 322, 100 A. 552; Nye v. Koehne, 22 R. I. 118, 47 A. 215. All of these cases, however, recognize the rule that, where the trust is created by a will, the obligation of the court is to ascertain the intention of the testator so far as possible and enforce that intention. That a different conclusion was reached in those cases than that here announced is readily accounted for by the difference in circumstances under which the will was prepared as well as difference in the language employed. For instance, in the case of Meek v. Briggs, 87 Iowa 610, 54 N. W. 456, 43 Am. St. Rep. 410, which is the principal Iowa case relied upon, what is said as to what becomes of the corpus of the trust estate upon the death of the beneficiary is only dictum, but it may be conceded to be sound as applied to the facts in that case. There the bequest was not to the trustee but directly to the beneficiary, with a provision in a subsequent paragraph that trustees were to

take charge and manage the estate until such time as the beneficiary should marry. Clearly, the intention there was that the beneficiary was to have an absolute estate. The provision with reference to a trusteeship was merely for the management and control and conservation of the estate during the period of the beneficiary's life when it may be assumed the testator believed the beneficiary was incapable of exercising the discretion necessary to properly manage the estate. A somewhat similar situation may be found in many of the other cases, and in none of them does it appear, as it appears in the case at bar, that the obvious purpose in the creation of the trust was to prevent creditors then existing from getting the benefit of the bequest, and this circumstance ought to be persuasive on the question of whether or not the testator intended an absolute right to the fund to vest in the beneficiary.

It is true that some of the cases say that there is a presumption that an absolute gift was intended, but any presumption there might be would, of course, have to yield to circumstances indicating a contrary intention. In re Estate of W. J. Best, 206 Iowa 786, 221 N. W. 369, there was a bequest made by a testator to a son of the sum of $500, "to be used to further his education, said amount to be placed in a savings account and be allowed to run until he has arrived at the age of eighteen, when it shall be used for that purpose." The son died before the testator. It thus became impossible to carry out the provision of the will to the extent of having the money applied to his education. This court held that the bequest lapsed on that account. Such holding, which is not in entire harmony with some of the cases cited by appellee, would indicate that whatever presumption in favor of the vesting of an absolute estate there may be in this state is readily overcome by circumstances indicating a contrary intention.

It cannot be said that there is any general rule of law to the effect that upon the death of a beneficiary of a testamentary trust the right to the trust funds vests in the personal representatives of the beneficiary's estate. Where it is so held, it is because the language of the will, read in the light of the circumstances under which it was made, indicates, in the opinion of the court, that such was the intention of the testator. That a different result may and frequently does follow is shown by the fol-

lowing statement from the recently published volume of Corpus Juris on the subject of Wills:

"In the absence of a manifest intention or a provision in the will to the contrary, the property included in a trust will pass to the heir or next of kin of the testator, or to his residuary devisee or legatee, as the case may be, where the trust is invalid; where the beneficiary is not named at all or is insufficiently described, or the objects to be benefited are otherwise uncertain; where the beneficiary dies before the gift takes effect or for other reasons cannot take; where the object of the trust becomes impossible of performance; where the trust does not exhaust the property, except in charitable gifts in which may be applied the cy pres doctrine." 69 C. J. 821, 822.

The circumstance that the testator failed to make any provision for disposition of the trust fund remaining after the death of the beneficiary is held in some of the cases cited by appellee as evidencing an intention that an absolute and inheritable interest in the fund should vest in the beneficiary. Under some circumstances, such failure might be suggestive of such an intention, but, under the circumstances in this case, such a failure is of very little force. The testator could not have anticipated the situation which has arisen here. He undoubtedly anticipated that the entire fund would be consumed by the trustee in carrying out the provisions of the trust. There would be greater reason for apprehension on his part lest the fund would not be sufficient. There is every indication here that it would have been entirely inadequate if the daughter had lived the normal span of life. Where the situation is such that the testator had every reason to believe that the trust fund would be consumed in carrying out the provisions of the trust, his failure to provide for a disposition of the fund in event of the beneficiary's death can have little persuasive force as indicating an intention that the beneficiary was to take an absolute estate.

The fact is that the will makes no specific provision for a disposition of the funds in the event it cannot be used for the care and support of Charlotta Case because of her death. It must therefore be considered to be a part of the estate not specifically bequeathed and passing under the residuary clause of the will.

In the opinion of this court, the decree of the trial court

194

reflects an incorrect interpretation of the will, and such decree must be, and is therefore, reversed, and this case remanded to the district court for the entry of a decree in harmony with this opinion.—Reversed and remanded.

KINTZINGER, C. J., and all Justices, except MITCHELL, J., concur.