SCHMIDT *v.* THE NATIONAL BANK OF LOGANSPORT
AND TABER, TRUSTEES, ETC. ET AL.

[No. 18,217.   Filed June 23, 1952.   Rehearing denied
September 17, 1952.   Transfer denied, November 12, 1952.]

*Albert H. Cole, Albert H. Cole, Jr.* and *Russell J. Wildman,* all of Peru, for appellant.

*Paul Myers* and *Myers & Molique,* of Logansport, for appellee, Paul Graham Taber.

*John D. Shoaff,* and *Shoaff, Keegan & Baird,* all of Fort Wayne, for appellees, Allen Hamilton, Agnes

**4**

Hamilton, Jessie Hamilton, Jesse Taber, Jesse Taber, administrator.

*John D. Shoaff* and *Shoaff, Keegan & Baird,* all of Fort Wayne for cross-appellants.

*Anderson & Anderson* and *Hillis & Hillis* both of Logansport for cross-appellee, Mabel Walker Edwards.

WILTROUT, J.—Upon consideration of the petition for rehearing filed by certain of the appellees and cross-appellants we have concluded to recall our initial opinion herein, 105 N. E. 2d 343, and substitute the following therefor:

This action was instituted by the appellee trustees under the last will and testament of Stephen C. Taber, deceased, wherein they request a construction of the will so that their duties, as well as the rights of the parties, may be determined. A change of venue was taken from the Cass Circuit Court to the Pulaski Circuit Court.

The court found the facts specially and stated conclusions of law thereon. The findings of facts are not questioned, the questions presented here going only to the conclusions of law stated thereon.

Stephen C. Taber executed his will on January 28, 1892, and on later dates executed three codicils thereto. Only the first of these codicils, executed in 1905, has a bearing on the questions presented.

The court found that testator died in 1908, leaving no widow, but leaving as his sole and only heirs at law two sons and a daughter. The daughter, Lovina Taber, was born in 1861. On June 25, 1887, she became an inmate of a private institution for nervous and mental diseases, and remained there until her death in 1948. She suffered from a disease commonly known

as dementia praecox, with which she was afflicted from the time of her admission to the institution. She was, from the time of her admission, permanently and incurably insane and wholly incompetent to enter into a contract of marriage or to give birth to legitimate children, of which facts testator had knowledge. Testator instituted a proceeding to have his daughter adjudged a person of unsound mind and incapable of managing her estate. Pursuant to this application the daughter was so adjudged on February 22, 1892, and testator was appointed her guardian.

That part of the will and first codicil here involved read as follows:

"First: I give and bequeath to my two (2) sons George C. Taber and Charles E. Taber and to the Survivor of them in Trust and as Trustees for my daughter Lovina Taber Seventy-Five Thousand Dollars ($75,000.00) of the Principal of my United States Four (4) per cent Bonds maturing in the year 1907 and now registered in my name and I direct said Trustees or the Survivor of said Trustees to procure and cause all of said Bonds so given and bequeathed in Trust to be registered in their names or the name of their Survivor as such Trustees or Trustee for said Lovina Taber. I direct said Trustees and the Survivor of said Trustees to apply and expend as much of the interest and income arising or accruing from said Bonds or from any Securities or Investments or Property whatever belonging to said Trust to and for the good and sufficient Care and Support and Comfort and medical and other Treatment of my daughter Lovina Taber as may be needed in the liberal judgment and discretion of said Trustees or the Survivor of said Trustees. I direct said Trustees and the Survivor of said Trustees to at least semi-annually invest any and

all Excess of Interest and Income derived from said Bonds or derived from any Securities or Investments or Property whatever belonging to said Trust which may not be needed for the liberal and good Care and Support and Comfort and medical and other Treatment of said Lovina Taber or other necessary expenses of said Trust in safe income bearing Securities in the names of said Trustees or in the name of the Survivor of said Trustees for said Lovina Taber and for her sole and only use and benefit. At the maturity of said Bonds or at any time before or after the maturity of said Bonds if my daughter Lovina Taber shall still be living I direct said Trustees and the Survivor of said Trustees, if they or he deem it profitable and safe and best for said Trust, to collect or sell or realize the Principal and Premium of all or any part of said Bonds or any other Securities or Investments or Property whatever belonging to said Trust and to re-invest the entire amount of all such Principal and Premium and Proceeds in such income bearing Securities as may be deemed safe and profitable and best for said Trust by said Trustees or the Survivor of said Trustees in their or his best judgment and discretion strictly in Trust and as Trustees or Trustee for said Lovina Taber and for her sole and only use and benefit. I direct that said Trustees or the Survivor of said Trustees shall not have nor be allowed any Compensation whatever for administering or executing or settling said Trust or as Trustees or Trustee for said Lovina Taber.

"Second: I give and bequeath and devise absolutely and in fee simple to my two (2) sons George C. Taber and Charles E. Taber in equal proportions and as equal Tenants in common all of my Lands and Town Lots and Real Estate and Improvements and all of my Books and Papers and Pictures and Money and Bonds and

Stocks and Claims and Personal Property of every kind and description whatever of which I may die seized or owning or possessed either legally or equitably Except and Excluding the said Seventy-Five Thousand Dollars ($75,000.00) of the Principal of said United States Four (4) per cent Bonds hereinbefore given and bequeathed to said George C. Taber and Charles E. Taber and to the Survivor of them in Trust and as Trustees for my daughter Lovina Taber.

"Third: I direct that my son George C. Taber pay to my son Charles E. Taber the One-Half (½) part of Eight Thousand and Five Hundred Dollars ($8,-500.00) which I have heretofore advanced to said George C. Taber.

"Fourth: I direct that said George C. Taber and Charles E. Taber pay at their own Cost and Expense and in equal proportions all of my just debts and funeral and other Expenses and all of the Costs and Expense of the Administration and Settlement of my Estate and all of the just and legal debts and Claims and Taxes and Assessments against the whole or any part of my Estate and I direct that not any part of my just or other debts or funeral or other Expenses or Costs or Expense of the Administration or Settlement of my Estate or just or legal or other debts or Claims or Taxes or Assessments against the whole or any part of my Estate shall be charged to or paid by said Lovina Taber or her Property or her Estate."

"Codicil Item No. 1. Whereas I have recently sold the Seventy-Five Thousand Dollars ($75,000.00) of United States Four (4) per cent Bonds maturing in the year 1907 which I bequeathed to my two (2) sons George C. Taber and Charles E. Taber and to the survivor of them in Trust and as Trustees for my daughter Lovina Taber, under the first item of my

above and foregoing will, I now in lieu thereof hereby give and bequeath to my two (2) sons George C. Taber and Charles E. Taber and to the survivor of them in Trust and as Trustees for my daughter Lovina Taber, Seventy-Five Thousand Dollars ($75,000.00) of the Principal or Face Value of any United States Government Bonds, or Bonds issued under or by the authority of the Government of the United States of America, which I may own at the time of my death, no deductions to be made on account of any premiums that may be upon any of said bonds at the time of my death. And I direct that said Trustees or the survivor of said Trustees procure and cause all of said bonds so given and bequeathed in trust to be registered in their names or the name of the survivor of them as such Trustees or trustee for said Lovina Taber. And if at the time of my death I do not own that amount of United States Government Bonds, or bonds issued under or by the authority of the Government of the United States of America, I direct that any deficiency necessary to make said Trust Fund equal to Seventy-Five Thousand Dollars ($75,000.00) shall be paid to said Trustees in cash from and out of my Estate, which said Trust Fund of Seventy-Five Thousand Dollars ($75,000.00) so bequeathed shall be in lieu and in full of any and all interest or right which my said daughter Lovina Taber shall or would have in or to my estate. And I direct said Trustees and the survivor of said Trustees to apply and expend as much of the interest and income arising or accruing from said Trust Fund to and for the good and sufficient care and support and comfort and medical and other treatment of my said daughter Lovina Taber as may be needed in the liberal judgment and discretion of said Trustees or the survivors of said Trustees. I direct said Trustees and the

survivor of said Trustees to at least semi-annually invest any and all excess of interest and income derived from said trust fund which may not be needed for the liberal and good care and support and comfort and medical and other treatment of said Lovina Taber or other necessary expenses of said Trust, in safe income bearing securities in the names of said Trustees or in the name of the Survivor of said Trustees for said Lovina Taber and for her sole and only use and benefit; which excess when so invested shall become a part of said trust property or Fund. I also direct and hereby empower said Trustees and the survivor of them, if they or he deem it profitable and safe and for the best interests of said Trust, to change said bonds or securities or investments or other property comprising said Trust Fund and to reinvest the same in other non-taxable income bearing bonds, securities or investments in the names of them as such Trustees or Trustee in trust for said Lovina Taber and for her sole and only use and benefit. I direct that said Trustees or the survivor of said Trustees shall not have nor be allowed any compensation whatever for administering or executing or settling said Trust or as Trustees for said Lovina Taber."

Upon the final settlement and distribution of Stephen C. Taber's estate the executors distributed and paid to the trustees the bequest provided for in Item 1 of Codicil No. 1. The plaintiffs in this action are the successor trustees.

The income from the trust fund exceeded the amounts expended by the trustees, and at Lovina Taber's death the fund in the hands of the trustee amounted to over two hundred thousand dollars. There were also assets in the possession of her guardian of the value of approximately twenty thousand dollars.

The court further found:

"7. Lovina Taber died intestate March 17, 1948. She left no husband, child, descendants of children, brother, sister, descendants of brother or sister, father, mother, grandparents, uncles or aunts her surviving. She left surviving as her sole and only heirs at law and next of kin in the paternal line five cousins of the whole blood, the defendants, Allen Hamilton, Agnes Hamilton, Jessie Hamilton, Jesse Taber, and Paul Graham Taber. The said Allen Hamilton, Agnes Hamilton and Jessie Hamilton are all children of Phoebe Taber Hamilton, who was a sister of Stephen C. Taber, Lovina's father. The defendants, Jesse Taber and Paul Graham Taber, are children of Paul Taber, who was a brother of Stephen C. Taber, Lovina's father. Both the said Phoebe Taber Hamilton and the said Paul Taber, brother of Stephen C. Taber, predeceased Lovina Taber. In addition to said five first cousins of the whole blood in the paternal line, Lovina Taber left surviving her as her sole and only heir at law and next of kin in the maternal line one first cousin of the half blood, the defendant, Mabel Walker Edwards, a daughter of John Milton Walker, who was half-brother of Charlotte Taber, mother of Lovina Taber. The said John Milton Walker predeceased Lovina Taber. He was the son of the maternal grandfather of Lovina Taber, George B. Walker, by his second wife. The first wife of George B. Walker was Lavinia Ewing Walker, who was the maternal grandmother of Lovina Taber."

"11. The said George C. Taber died testate may 2, 1930, and by his last will and testament, duly admitted to probate in the Cass Circuit Court, Cass County, Indiana, he bequeathed all of his personal and mixed property of every nature and kind, to his widow, Anna Rice Taber. . . . The said Anna Rice Taber died testate on May 18, 1940, and by her will, which was duly admitted to probate in the Cass Circuit Court of Cass County, Indiana, she bequeathed all of her property to her niece, Olie M. Schmidt, one of the defendants in this case. . . ."

"12. Charles E. Taber died September 6, 1933, testate, and his will was duly admitted to probate by the Cass Circuit Court of Cass County, Indiana, and by the terms of said will he devised and bequeathed all of the residue of his estate, real, personal and mixed, to his aunt, Phoebe A. Hamilton, if she survived him, otherwise to the children of said Phoebe A. Hamilton. . . . The said Phoebe A. Hamilton died prior to the death of the said Charles E. Taber, leaving four children who survived both her and the said Charles E. Taber, to-wit: Allen Hamilton, Agnes Hamilton, Jessie Hamilton, and Taber Hamilton. The said Taber Hamilton died December 26, 1942, leaving a last will and testament which was admitted to probate by the Register of Wills of the County of Philadelphia, State of Pennsylvania, by the terms of which will the said Taber Hamilton devised and bequeathed all of his property to his widow, Abigail G. Hamilton, who is named as a defendant in this cause. . . ."

Copies of the will of Stephen C. Taber together with the codicils thereto and the wills of George C. Taber, Anna Rice Taber, Charles E. Taber and Taber Hamilton are made a part of the special findings.

Upon the facts thus found the court concluded first that the trust had terminated. This conclusion is not questioned by any of the parties. The court then concluded that the funds remaining in the hands of the trustees, after payment of costs and expenses of liquidation of the trust estate, belong to the estate of Lovina Taber, deceased, and should be paid to the administrator of that estate, to be administered and distributed as assets thereof.

Appellant, Olie M. Schmidt, challenges this conclusion, contending that the remainder interest in the trust fund passed to testator's two sons under Clause Second of the will but that if it did not then it descended to testator's next of kin as intestate property. The position of appellees is that the will gave an "equi-

table fee" to Lovina Taber which passed, not as a remainder, but by descent to her next of kin.

It appears to us that the sole purpose of the trust was to insure that testator's unfortunate daughter would have good and sufficient care, support, comfort and medical and other treatment after testator's death. It was not a dry or passive trust. The trustees were given broad discretionary powers to expand as much of the interest and income in carrying out the purpose of the trust as in their liberal judgment and discretion was needed. Of course, the nature of the expenditures limited them to the period of the daughter's life.

Some of the appellees in their brief argue that from certain sentences and phrases there is revealed an intent by testator to bequeath the sole beneficial interest in both the income and principal to his daughter; that the extrinsic facts support this intent; and that this construction is required by the established rules of construction.

"It is true that in the construction of a will all of its provisions must be considered and the intention of the testator, if clearly manifested from a consideration of all the language contained within the 'four corners' of the will, must be given effect, if lawful and not in contravention of some principle or rule of law, and in such cases it is not necessary to resort to rules of construction." *Franklin College* v. *Wolford* (1948), 118 Ind. App. 401, 78 N. E. 2d 35.

In our opinion, the language of the will and codicil does not disclose an intention of the testator to bequeath the entire beneficial interest in both income and principal to his daughter or that the trust fund become a part of the estate of his daughter following her death. Neither do we find anything in the extrinsic

facts found by the court which indicates that this was testator's intention.

Much of appellees' argument concerning the application of established rules of construction is based upon the meaning and effect to be given the first sentence of the codicil whereby testator gave and bequeathed to his sons in trust and as trustees for his daughter bonds of the principal or face value of $75,000. It is argued that this sentence, standing alone, vested in the daughter the complete beneficial interest both as to principal and income of the bonds; that there is nothing thereafter which cuts down the interest given.

Considerable reliance is placed by appellees upon the cases of *Franklin College* v. *Wolford, supra; Julian, Admr.* v. *McAdams, Trustee* (1927), 85 Ind. App. 639, 155 N. E. 524; and *Hancock, Trustee* v. *Maynard* (1920), 72 Ind. App. 661, 126 N. E. 451. The wills under consideration in those cases were substantially different from the will involved in the present case and the principles there announced are not controlling under the factual situation presented here.

We must determine the intention of the testator from the "four corners" of the will and not from the first sentence of the codicil alone. When so read it is apparent that the mere fact that a bequest was made to the sons in trust and as trustees for the daughter is not equivalent to a bequest of the absolute beneficial interest in the fund to the daughter of both principal and income. *Loomis* v. *Gorham* (1904), 186 Mass. 441, 71 N. E. 981; *Lewis* v. *Harrower* (1902), 197 Ill. 315, 64 N. E. 374; *Boyer* v. *Backus* (1937), 282 Mich. 593, 276 N. W. 564; *Gillespie* v. *Lainhart* (1943), 134 N. J. Equity 85, 34 Atl. 2d 147. Rather it appears that the intention of the testator was that his daughter should receive only that which is

specifically provided, the right to have expended for her good and sufficient care, support, comfort and treatment so much of the income as might be needed in the liberal judgment and discretion of the trustees.

The provision that the trust fund "so bequeathed in lieu and in full of any and all interest or right which my said daughter Lovina Taber shall or would have in or to my estate" does not make a bequest, but refers only to the fund "so bequeathed."

In our opinion the provision that the excess of income be invested "in the name of the Survivor of said Trustees for said Lovina Taber and for her sole and only use and benefit" does not indicate an intention that her next of kin were to succeed to the fund upon her death, but rather indicates that the beneficial interest was limited to the period of her life.

We conclude that the court erred in its conclusion of law No. 2 to the effect that the funds remaining in the hands of the trustees, after payment of costs and expenses of liquidation of the trust estate, belong to the estate of Lovina Taber, deceased, and should be paid to the administrator of her estate to be administered and distributed as assets of said estate.

Upon the termination of the trust it became the duty of the trustees to pay the fund to the persons entitled thereto upon the death of Lovina Taber. *Hutchinson's Estate* v. *Arnt, Admx.* (1939), 215 Ind. 687, 21 N. E. 2d 402; *Newton* v. *Hunt* (1952), 122 Ind. App. 146, 103 N. E. 2d 445.

To determine who these persons are we must first determine whether the remainder interest in the fund passed to testator's two sons under Clause Second of the will or whether there was a partial intestacy as to such property.

"When one makes a will it is presumed that he intends to distribute all of his property, and, since a construction which would result in partial intestacy is ■ contrary to such a presumption, it will be avoided where any other reasonable construction is open." *Hutchinson's Estate* v. *Arnt, Admx.* (1936), 210 Ind. 509, 1 N. E. 2d 585, 4 N. E. 2d 202, 108 A. L. R. 530. All parts of the will are to be construed together and in relation to each other so that, if possible, they form one consistent whole. *Grimes' Executors* v. *Harmon and Others* (1871), 35 Ind. 198, 254; *Brumfield et al.* v. *Drook et al.* (1885), 101 Ind. 190; *Quinn* v. *Peoples Trust & Savings Co.* (1945), 223 Ind. 317, 60 N. E. 2d 281.

We have heretofore held that it was the intention of the testator that under the bequest in Item 1 of Codicil No. 1 his daughter should receive only ■ that which is specifically provided, the right to have expended for her good and sufficient care, support, comfort and treatment so much of the income as might be needed in the liberal judgment and discretion of the trustees. The codicils to the will gave certain property to the housekeeper. All the balance of the estate was given to the two sons by Clause Second of the will, "Except and Excluding the said Seventy-Five Thousand Dollars ($75,000.00) of the Principal of said United States Four (4) per cent Bonds hereinbefore given and bequeathed to said George C. Taber and Charles E. Taber and to the Survivor of them in Trust and as Trustees for my daughter Lovina Taber."

Applying the rules of construction set forth above, in our opinion it was the intention of the testator to exclude from the gift to the two sons in Clause Second only the interest which had been given to them as trustees. The exclusion in Clause Second was no

broader than the gift in Clause First. We conclude that the remainder interest in the fund passed to testator's two sons, George C. Taber and Charles E. Taber, under Clause Second of the will. The appellee trustees should therefore be directed to distribute one-half thereof to persons found by Finding No. 12 to be the successor in interest to Charles E. Taber, to-wit: Allen Hamilton, Agnes Hamilton, Jessie Hamilton, and Abigail Hamilton. The remaining one-half should be directed to be distributed to the appellant, Olie M. Schmidt, who is shown by Finding No. 11 to be the successor in interest to George C. Taber.

Some of the appellees have assigned cross-errors. The only question which is attempted to be presented thereby is whether the court erred in failing to conclude upon the special findings that the appellee Mabel Walker Edwards had no right, title or interest, either as an heir of Lovina Taber or otherwise in the assets of the trust. This could only become material in this case in the event there was no error in the court's conclusion of law No. 2, or some part of the fund became an asset of Lovina Taber's estate. It is therefore not necessary to further discuss the assignment of cross-errors.

Judgment reversed with instructions to restate the conclusions of law in accordance with this opinion and to enter judgment accordingly.

NOTE.—Reported in 106 N. E. 2d 698.