ALICE F. BROWN, JEFFREY N. BROWN, SUSAN A. BROWN, ANN E. MARSHALL KNOBLOCH, THOMAS ROBERT MARSHALL, DAVID WILLIAM BROWN, DAVID JOHN MARSHALL, PAMELA SUE BROWN, ROBERT MARSHALL, REBECCA E. BROWN, PEGGY A. BROWN DECLUE, AND TIMOTHY RICHARD BROWN, PETITIONERS[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 13482–78.    Filed October 28, 1980.

---

[1]Each of the 12 petitioners herein is the beneficiary of a trust which was a limited partner in a limited partnership with the three grantors of the 12 trusts and with the other 11 trusts. All of the trusts were administered by the same trustee and are identical, except with respect to the donor, beneficiary, and size of partnership interest. The petitioners herein are before this Court on identical issues under a single petition as transferees of these trusts, which have since been terminated. The petitioners are: the transferees of those trusts created by Robert N. Brown—Alice F. Brown, Jeffrey N. Brown, Susan A. Brown, Rebecca E. Brown, and Peggy A. Brown DeClue; those of trusts created by Elizabeth Brown Marshall—Ann Elizabeth Marshall Knobloch, Thomas Robert Marshall, David John Marshall, and Robert Marshall; and those of those trusts created by Richard Brown—David William Brown, Pamela Sue Brown, and Timothy Richard Brown. All of the petitioners are represented individually and as a group by the same counsel.

*John T. Sharpnack*, for the petitioners.
*Rodney J. Bartlett*, for the respondent.

BRUCE, *Judge:* Respondent determined deficiencies in the Federal income taxes for various tax years ending in 1973 of 12 related trusts. Notices of deficiency were sent to the beneficiaries of those trusts on September 21, 1978, as alleged transferees of their respective beneficial trusts, as follows:

| Settlor | Beneficiary/transferee | Taxable year ending | Deficiency | Sec. 6651(a)(1) penalty |
|---|---|---|---|---|
| Robert N. Brown | Alice F. Brown | 6/15/73 | $3,666.56 | $916.64 |
| | Jeffrey N. Brown | 6/27/73 | 2,749.94 | 687.49 |
| | Susan A. Brown | 6/11/73 | 2,749.94 | 687.49 |
| | Rebecca E. Brown | 6/27/73 | 2,749.94 | 687.49 |
| | Peggy A. Brown DeClue | 6/29/73 | 2,749.94 | 687.49 |
| Elizabeth Brown Marshall | Ann Elizabeth Marshall Knobloch | 6/29/73 | 916.63 | 229.16 |
| | Thomas Robert Marshall | 7/31/73 | 916.63 | 183.33 |
| | David John Marshall | 12/28/73 | 916.63 | --- |
| | Robert Marshall | 12/18/73 | 2,163.27 | --- |

| | | | | |
|---|---|---|---|---|
| | David William Brown | 8/ 9/73 | $1,635.29 | $245.29 |
| Richard Brown | Pamela Sue Brown | 12/28/73 | 1,635.29 | --- |
| | Timothy Richard Brown | 12/28/73 | 1,635.29 | --- |

The issues presented by this case are: (1) Whether the recapture of a portion of investment credits distributed to the 12 trusts as limited partners was required, upon termination of their respective interests in the limited partnership, in 1972 or in 1973; (2) whether 8 of the trusts were liable for additions to tax under section 6651(a)(1)[2] for failure to timely file their income tax returns for partial taxable years ending during 1973; and (3) whether each of the petitioners herein is liable as a transferee under section 6901 for any deficiency determined against his or her respective beneficial trust.

All of the petitioners concede that they are liable as transferees of their respective beneficial trusts for any deficiency which may be determined against them and those eight petitioners concerned concede their respective liabilities for additions to tax under section 6651(a)(1) if we find the investment credit recapture to have been required in 1973. Since a finding that the recapture was required in 1972 would eliminate taxable income for 1973 for all of the trusts, effectively eliminating the additions to tax under section 6651(a)(1),[3] the only issue remaining for our decision is whether the investment credit recapture was required in 1972 or 1973.

The case was submitted for decision without trial under Rule 122, Tax Court Rules of Practice and Procedure.

### FINDINGS OF FACT

Most of the facts have been stipulated and are so found. The stipulation and supplemental stipulation and the exhibits attached thereto are incorporated herein by this reference.

---

[2]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.

[3]Petitioners have not shown that the late filings were due to reasonable cause and not willful neglect. Sec. 6651(a)(1), thus, will be applicable, except that it provides for an addition to tax based upon a percentage of tax required shown on such late return. If we find the recapture required in 1972, the trusts will have no tax upon which to calculate the addition and no addition is applicable. *Garth v. Commissioner*, 56 T.C. 610 (1971); *Goodwyn Crockery Co. v. Commissioner*, 37 T.C. 355 (1961), affd. on another issue 315 F.2d 110 (6th Cir. 1963). If we find otherwise, the issue has been conceded by petitioner.

The petitioners in this case are transferees and beneficiaries of certain trusts which existed during various taxable years ending in or with calendar year 1973. At the time of filing of the petition in this case, the petitioners' respective residences were as follows:

| Name | Address |
| --- | --- |
| Alice F. Brown | R. R. No. 5, Box 87, Columbus, Ind. 47201 |
| Jeffrey N. Brown | R. R. No. 5, Box 87, Columbus, Ind. 47201 |
| Dr. Susan A. Brown | 12343 H. Spanish Trace, Maryland Heights, Mo. 63043 |
| Ann E. Marshall Knobloch | 2209 Crestwood Court, Dunwoody, Ga. 30338 |
| Thomas Robert Marshall | 883 Granada Drive, Greenwood, Ind. 46142 |
| David William Brown | 367 Knight Way, La Canada, Calif. 91011 |
| David John Marshall | 205 East Thompson Street, Urbana, Ill. 61801 |
| Pamela Sue Brown | 3644 Third Avenue, La. Crescenta, Calif. 91214 |
| Robert Marshall | R. R. No. 9, Harrison Lake, Columbus, Ind. 47201 |
| Rebecca E. Brown | Bataan National Agricultural School, Abuclay Bataan, Philippines |
| Peggy A. Brown DeClue | 645 Lafayette Street, Columbus, Ind. 47201 |
| Timothy Richard Brown | 924 West Summit, Flagstaff, Ariz. 86001 |

The trusts were identical except for donor, beneficiary, and size of interest in the limited partnership known as Home News Enterprises (News). Since each trust is sufficiently similar to all of the other trusts with respect to the investment tax credit recapture issue, and since each of the eight trusts against which additions to tax under section 6651(a) have been determined are sufficiently similar to the other seven trusts similarly situated, the trusts will be referred to collectively, and findings of fact and opinion will apply equally to each of the petitioner-transferees herein as warranted by each situation.

On January 31, 1962, by identical trust agreements, Robert N. Brown (Robert), Elizabeth B. Marshall (Elizabeth), and Richard Brown (Richard) created five, four, and three grantor trusts, respectively. The corpus of each trust, transferred to the common trustee, Irwin Union Bank & Trust Co., Columbus, Ind., was a fractional interest in the net assets of a partnership known as "The Evening Republican" and "Columbus Herald" (Herald). Each trust instrument provided that the trust "shall terminate on the 31st day of December, 1972, or on the earlier

death of said [beneficiary], or on the earlier death of Grantor" and that "upon the termination of this trust the corpus of this trust shall be paid and distributed to the Grantor or to his estate if he be deceased."

Prior to January 31, 1962, Robert, Elizabeth, and Richard were the only partners in Herald, with respective interests of 60, 20, and 20 percent. However, simultaneous with the creation of the trusts, Robert, Elizabeth, and Richard created the News limited partnership with the trusts as limited partners of variously sized interests and the grantors holding respective general partnership interests of 20, 6.6, and 6.62 percent. The limited partnership agreement provided that "The term for which the partnership is to exist is from the 1st day of February, 1962, until and including the 31st day of December, 1972." On February 23, 1962, a certificate of limited partnership for News was filed as required by Indiana Code Annotated section 23-4-2-2 (Burns), stating, among other things, that "The term for which the partnership is to exist is: Commencing on the 1st day of February, 1962, and expiring with the close of business December 31, 1972."

On December 31, 1972, Robert, Elizabeth, and Richard entered into an agreement to continue News as a general partnership, with a fourth general partner, not one of the trust beneficiaries, commencing January 1, 1973.

During the existence of the trusts, the News limited partnership invested in assets qualified under section 38 for investment tax credits with respect to taxable years 1967, 1968, 1969, 1971, and 1972. The useful lives of most of these assets had not expired as of January 1, 1973. Since trust income was not distributed to the beneficiaries until after termination of the trusts, the investment tax credits were annually distributed to the trusts in their respective income share proportions, thereby reducing the income tax of the trusts as provided in section 48(f)(1) for each of the years 1967, 1968, 1969, 1971, and 1972. The trusts did not recapture any of the investment tax credits for prior years on their respective final returns for the respective tax years ending on various dates in 1973.

Final income tax returns for eight of the trusts were filed for the years ended in 1973 as shown below:

| Trust for— | Tax year ending | Date return filed | Date return due | Late |
|---|---|---|---|---|
| Alice F. Brown | 6/15/73 | 3/14/74 | 10/15/73 | 5 months |
| Jeffrey N. Brown | 6/27/73 | 3/14/74 | 10/15/73 | 5 months |
| Susan A. Brown | 6/11/73 | 3/14/74 | 10/15/73 | 5 months |
| Rebecca E. Brown | 6/27/73 | 3/14/74 | 10/15/73 | 5 months |
| Peggy A. Brown | 6/29/73 | 3/14/74 | 10/15/73 | 5 months |
| Ann Elizabeth Marshall Knobloch | 6/29/73 | 3/14/74 | 10/15/73 | 5 months |
| Thomas Robert Marshall | 7/31/73 | 3/14/74 | 11/15/73 | 4 months |
| David William Brown | 8/ 9/73 | 3/14/74 | 12/15/73 | 3 months |

Respondent has determined that an investment tax credit recapture for partnership section 38 assets by the trusts was required in 1973. It is respondent's position that the termination of News in 1973 either resulted in the disposition of the section 38 assets by the partnership or resulted in the total reduction of the trusts' interests in the assets, thus requiring recapture in 1973. In the alternative, respondent argues that the return of the trusts' interests to the grantors required recapture of the credits in 1973. To the contrary, petitioner contends that the termination of News occurred in 1972 under Indiana law, thereby totally reducing the trusts' interests in the partnership section 38 assets and requiring recapture of related investment tax credits in 1972, not 1973.

## OPINION

Section 38 allows a credit against income tax for qualified investment in certain property. Rules governing qualification for the credit are contained in section 46 (determining amount of credit) and in section 48 (special rules and definitions). If the property on which credit has been taken is "disposed of or otherwise ceases to be section 38 property" before the close of its useful life, then income taxes will be increased by an adjustment or "recapture" of the prior credit as required by section 47.

Section 47(a)(1) provides:

SEC. 47. CERTAIN DISPOSITIONS, ETC., OF SECTION 38 PROPERTY.

(a) GENERAL RULE.—*Under regulations prescribed by the Secretary*—

(1) EARLY DISPOSITION, ETC.—If during any taxable year any property is disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer, before the close of the useful life which was taken into account in computing the credit under section 38, then the tax under this chapter for such taxable year shall be increased by an amount equal to the aggregate

decrease in the credits allowed under section 38 for all prior taxable years which would have resulted solely from substituting, in determining qualified investment, for such useful life the period beginning with the time such property was placed in service by the taxpayer and ending with the time such property ceased to be section 38 property.

[Emphasis supplied.]

Thus, we must turn to the regulations promulgated under section 47 to answer any questions on investment tax credit recapture.[4] The petitioners concede that a recapture was required. Presented for our decision is the question of when the recapture should have been taken.

Recapture of the investment tax credit for partnership section 38 property by a partner upon disposition or cessation of his partnership interest, including reduction of that interest, is controlled by section 1.47–6(a)(2), Income Tax Regs.[5] Upon return of the corpus of each trust, its respective interest in the new assets of News, to the grantors, the interest of each trust in

---

[4]See also sec. 38(b) which provided:

The Secretary or his delegate shall prescribe such regulations as may be necessary to carry out the purposes of this section and subpart B [rules for computing the investment credit].

[5]Sec. 1.47–6 Partnerships.

(a) *In general*—

(2) *Disposition of partner's interest.* (i) If—

(*a*) The basis (or cost) of partnership section 38 property is taken into account by a partner in computing his qualified investment, and

(*b*) After the date on which such partnership section 38 property was placed in service by the partnership and before the close of the estimated useful life of the property, such partner's proportionate interest in the general profits of the partnership (*or in the particular item of property*) is reduced (for example, by a sale, by a change in the partnership agreement, or by the admission of a new partner) below the percentage specified in subdivision (ii) of this subparagraph, then, *on the date of such reduction such partnership section 38 property ceases to be section 38 property with respect to such partner to the extent of the actual reduction in such partner's proportionate interest* in the general profits of the partnership (or in the particular item of property). (For example, if $100 of the basis of section 38 property was taken into account by a partner and if his proportionate interest in the general profits of the partnership is reduced from 60 percent to 30 percent (that is, 50 percent of his original interest), then such property shall be treated as having ceased to be section 38 property to the extent of $50.) Accordingly, a recapture determination shall be made with respect to such partner. *For purposes of such recapture determination the actual useful life of such property shall be the period beginning with the date on which it was placed in service by the partnership and ending with the date on which it is treated as having ceased to be section 38 property with respect to the partner.* In making a recapture determination under this subparagraph there shall be taken into account any prior recapture determination made with respect to the partner in connection with the same property.

(ii) The percentage referred to in subdivision (i)(b) of this subparagraph is 66⅔ percent of the partner's proportionate interest in the general profits of the partnership (or in the particular item of property) for the year in which such property was placed in service. * * *

[Emphasis supplied.]

the section 38 assets of the partnership (indeed, in all of the assets of the partnership) was reduced to zero. Regardless of whether the partnership continued,[6] the trusts no longer held an interest in the section 38 property after the return occurred. It is this loss of interest which Congress intended to trigger recapture. *Charbonnet v. United States*, 455 F.2d 1195, 1199, 1201 (5th Cir. 1972). Therefore, at the time of the return of those trust assets, the trusts were required to recapture their respective shares of investment tax credits proportional to the reduction of their interests. Sec. 1.47–6(a)(2)(i)(*b*), Income Tax Regs. Since the interests of the trusts in the partnership section 38 property were reduced 100 percent, a total recapture with respect to all of the affected section 38 property of the partnership was required upon return of the assets.

Property rights of taxpayers are to be determined under applicable State law. *Commissioner v. Estate of Bosch*, 387 U.S. 456 (1967). Determination of when the return of assets occurred is to be made by interpretation of the trust agreement under Indiana law. Cf. *Hanover Bank v. Commissioner*, 40 T.C. 532 (1963); *Knapp Trust A v. Commissioner*, 46 B.T.A. 846 (1942). Therefore, we look to Indiana law, and any authoritative State court decisions from Indiana, for our answer. *Commissioner v. Estate of Bosch, supra*; *Estate of Faulkerson v. United States*, 301 F.2d 231 (7th Cir. 1962), cert. denied 371 U.S. 887 (1962).

Under Indiana law, a trustee's estate "is limited to that which is necessary to enable him to perform the trust." Ind. Code Ann. sec. 30–4–2–6 (Burns). This statute merely codifies the rule as expressed in prior case law. See *Levering v. Levering*, 88 Ind. App. 374, 162 N.E. 448, 450 (1928); *Hancock v. Maynard*, 72 Ind. App. 661, 126 N.E. 451 (1920); *French v. French*, 58 Ind. App.

---

[6]The parties focused most of their attention upon when News terminated as determinative of when sec. 38 property interests of the trusts were "disposed of" under sec. 47. Respondent is correct that petitioners' argument for termination of News under Indiana law is inapposite given sec. 708. See, e.g., *Evans v. Commissioner*, 447 F.2d 547 (7th Cir. 1971), affg. 54 T.C. 40, 50–51 (1970). Nevertheless, if a return of interest were an "exchange" for purposes of sec. 708(b)(1)(B), clearly News would have been terminated with the return of the interests, a shift of a 66.78 percent interest in News. Upon termination of News, the trusts' partnership interests would have been reduced to zero, thus triggering investment credit recapture. Sec. 1.47–6(a)(2), Income Tax Regs. Since we find that the trusts' interests in sec. 38 property was reduced to zero directly upon the return of the partnership interests to the grantors, regardless of the continued existence of the partnership, it is unnecessary for us to decide whether the return was an exchange under sec. 708(b)(1)(B) in deciding when News terminated and we do not do so here.

621, 108 N.E. 786 (1915); See also *Young v. Bradley*, 101 U.S. 782 (1879). This rule was applied to personalty, as well as realty. *Julian v. McAdams*, 85 Ind. App. 639, 155 N.E. 524 (1927). Section 30–4–2–6 contains no language which would limit its application to realty. Therefore, the intent of the grantors and the terms of the trust agreements will determine the existence and duration of the trustee's partnership interest, whether characterized as real or personal. Ind. Code Ann. secs. 30–4–1–3, 30–4–2–6 (Burns).

Under the terms of the trust agreements, the assets passed to the grantors "Upon termination of the trust." By the same documents, the trusts terminated "on the 31st day of December, 1972, or on the earlier death" of either the beneficiary or the grantor. Since all of the beneficiaries and grantors were alive as of January 1, 1973, the operative date is December 31, 1972.

Given the simultaneous creation of the limited partnership, also to terminate on December 31, 1972, and the creation, on that day by the grantors, of a succeeding general partnership to begin January 1, 1973, the intent of the grantors is clear. The trusts were to "terminate" on December 31, 1972.[7] Thus, the trustee was given only temporal interests in the partnership to exist only to and including December 31, 1972. Cf. *Hancock v. Maynard, supra.* With the end of the limited partnership and immediate succession in interest of the grantors in the new general partnership, no purpose of the grantors would have been served by the trusts holding the corpus, the partnership interests, an instant beyond December 31, 1972. Indeed, it was the intention of the grantors that the trusts themselves end on December 31, 1972. Thus, even though administrative powers continued in the trustee for distribution of accumulated income, the interests of the trusts in the partnership and its assets ended and were instantly returned to the grantors on December 31, 1972. Cf. *Hancock v. Maynard*, 126 N.E. at 456.

---

[7]Our finding that the trusts were to "terminate" on Dec. 31, 1972, is for purposes of determining property rights based upon Indiana State law. Therefore, we are not concerned with the provisions of sec. 1.641(b)–2(b), (c) and (d), Income Tax Regs., which deal with the termination of trusts for purposes of properly allocating taxable income between trusts and persons entitled to the property of the trusts. While we recognize that income earned during the "winding up" period is gross income to the trust, even if legally terminated under local law, this recognition of continued existence for income tax purposes does not interfere with the determination of property interests, the factor which determines investment credit recapture.

The return of each trust's interest was a disposal of an interest in section 38 property within the intended scope of section 47(a). "In general, property will be considered disposed of whenever it is sold, exchanged, transferred, distributed, involuntarily converted, or disposed of by gift." S. Rept. 1881, 87th Cong., 2d Sess. (1962), 1962–3 C.B. 843, 852–853. Therefore, the trusts were required to recapture related investment tax credits upon return of the assets in 1972, not 1973.[8] Cf. *Tri-City Dr. Pepper Bottling Co. v. Commissioner*, 61 T.C. 508, 511–512 (1974).

Respondent contends that traditional calculation of the trusts' holding periods for the assets would require the recapture in 1973, since the holding period of the trusts would include the date of disposition of the assets. See *Weir v. Commissioner*, 10 T.C. 996 (1948). While we adhere to the formula for calculating asset holding periods, it does not change the result here. The trusts may be viewed as holding their interests to and including December 31, 1972, the very day those interests terminated, without inconsistency. Including the date of disposition merely includes December 31, 1972. No such calculation changes the fact that December 31 was the day on which the partnership section 38 property ceased to be such with respect to the trusts. The trusts held no interest into 1973. Therefore, no cessation of interest could have occurred in 1973 and recapture was required in 1972.

Without recapture in 1973, the petitioners are not liable for additions to tax under section 6651(a)(1) for 1973.[9]

*Decision will be entered for the petitioners.*

---

[8]Erroneous income tax returns of the trusts which claimed investment credits for 1972, although inconsistent with the petitioners' position herein, do not prevent our reaching the above conclusion in the petitioners' favor as the proper one under the law for 1973. Since 1972, the year of recapture, is not before us, we make no findings as to the petitioners' liabilities for that year. But see secs. 1311–1314.

[9]See note 3 *supra*.